Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/04/2022 08:07 AM CST

STATE OF NEBRASKA, APPELLEE, V.
NATAVIAN Q. MORTON, APPELLANT.
___ N.W.2d ___

Filed November 12, 2021.    No. S-19-1168.

1. **Sentences: Appeal and Error.** A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court.

2. **Judges: Words and Phrases.** A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition.

3. **Sentences: Appeal and Error.** When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles.

4. **Sentences.** The relevant factors for a sentencing judge to consider when imposing a sentence are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.

5. ____. The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

6. **Sentences: Prosecuting Attorneys.** So long as the facts provide a sufficient basis to find all elements beyond a reasonable doubt for the crimes the defendant is convicted of, whether an alternative crime fits those facts best is a matter of prosecutorial discretion and not a reason to question the trial court's sentence on the crimes found to have been committed.

7. **Constitutional Law: Prosecuting Attorneys: Probable Cause.** Prosecutorial discretion is an inherent executive power under which the prosecutor has the discretion to choose to charge any crime that probable cause will support or, if the prosecutor chooses, not to charge the accused at all.

8. **Criminal Law: Intent.** A trier of fact may infer that the defendant intended the natural and probable consequences of the defendant's voluntary acts.

9. **Homicide: Intent.** An indiscriminate killer is just as culpable as one who targets a specific person.

10. **Sentences: Plea Bargains.** In deciding the appropriate sentence, a sentencing court can account for the fact that the defendant received a substantial benefit from a plea bargain agreement.

11. **Sentences: Statutes.** There is nothing in the statutory scheme requiring proportionality between the sentences imposed for the crimes of use or possession and the sentences imposed for their predicate offenses.

12. **Constitutional Law: Sentences: Appeal and Error.** Comparative analysis is not mandatory in a challenge under the Eighth Amendment and is useful only to validate an initial judgment that a sentence is so grossly disproportionate to a crime as to be excessive; review of an excessive sentence claim under Neb. Rev. Stat. § 29-2308 (Reissue 2016) is not subject to a higher standard.

13. **Sentences: Appeal and Error.** Appellate courts are under no duty to conduct a de novo review of the record to determine whether a sentence is proportionate.

14. **Constitutional Law: Sentences: Statutes: Appeal and Error.** Once it is determined that the sentence prescribed by statute is constitutional and that the sentence imposed is within statutory limits, the issue in reviewing a sentence is not whether someone else in a different case received a lesser sentence, but whether the defendant in the subject case received an appropriate one.

15. **Sentences: Appeal and Error.** The power to impose sentences is entrusted to the sentencing court and not to an appellate court.

Appeal from the District Court for Lancaster County: Lori A. Maret, Judge. Reversed and remanded with direction.

Jonathan M. Braaten and Mona L. Burton, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## INTRODUCTION

In the defendant's appeal to the Nebraska Court of Appeals from plea-based convictions of manslaughter and possession of a firearm during the commission of a felony, the Court of Appeals reduced the sentence imposed for the firearm conviction as excessive. We granted the State's petition for further review assigning as error the Court of Appeals' reduction of the sentence.

## BACKGROUND

Natavian Q. Morton was originally charged with second degree murder,[1] a Class IB felony; two counts of use of a firearm to commit a felony,[2] both Class IC felonies; and unlawful discharge of a firearm,[3] a Class ID felony. The charged offenses were alleged to occur at a time when Morton was 16 years of age. Morton's motion to transfer to juvenile court was denied after a hearing in August 2018.

Pursuant to a plea agreement, Morton pled no contest to manslaughter,[4] a Class IIA felony, and possession of a firearm during the commission of a felony, a Class II felony. After a colloquy between the court and Morton regarding the potential penalties for the offenses and the rights he was waiving by entering no contest pleas, the State provided a factual basis.

The State informed the trial court that on March 26, 2018, a young man had been shot and killed. The dispute had originated earlier in the day at a high school in Lincoln, Nebraska, where a fight had occurred which resulted in the suspension of several individuals, including Perrion Bluford and

---

[1] Neb. Rev. Stat. § 28-304 (Reissue 2016).

[2] Neb. Rev. Stat. § 28-1205(1)(c) (Reissue 2016).

[3] Neb. Rev. Stat. § 28-1212.02 (Reissue 2016).

[4] Neb. Rev. Stat. § 28-305 (Reissue 2016).

three residents of the house where the shooting occurred. The Lincoln Police Department investigator in charge of investigating the shooting also learned that there had been electronic communication between the two groups involved in the fight regarding continuing the fight later on that same day.

Video surveillance from another Lincoln high school, which Morton attended, showed Morton, wearing a black jacket, blue jeans, and tan shoes, leaving the high school at approximately 1:06 p.m. with two other individuals and getting into one of two vehicles that came to pick them up. One of the vehicles belonged to Bluford.

The Lincoln Police Department was detailed to the area of South 47th Street and Cooper Avenue at approximately 1:56 p.m. on a report of 15 people fighting outside a residence. Dispatch further indicated that someone had been hit by a vehicle and that shots had been fired. Upon arrival, officers observed an injured person on the porch who had suffered a gunshot wound. The victim, later identified as Edgar Union, Jr., died at the scene.

An individual involved in the incident informed law enforcement that Morton was one of approximately eight people who went to the residence to fight the occupants. Upon arrival, a verbal altercation ensued between the groups.

While this was occurring, a white sport utility vehicle (SUV) driven by a woman arrived with several passengers who exited the SUV and ran onto the porch. Later, the woman driving the SUV made a comment about running people over, reentered the SUV, drove in a circle, and struck an individual in the yard.

The witness then heard a gunshot, but did not know who fired it, because he was trying to help the victim struck by the SUV. Other witnesses corroborated much of the same information, identified Morton as someone present at the scene of the shooting, and stated that they saw an outline of a gun in his jacket pocket. No witnesses stated they saw Morton fire the gun.

An arrest warrant was issued for Morton on April 24, 2018, who was located and arrested in Mississippi. Police

interviewed Morton, who waived his *Miranda* rights and told officers that after he was picked up at the high school he attended, he rode with Bluford to the scene of the shooting. Upon their arrival at the scene, Bluford handed him the gun while they were still inside the vehicle and asked him to hold it. He agreed and put the gun in his jacket pocket. Morton admitted to firing the shot that killed the victim and provided information consistent with that of other witnesses. Specifically, Morton confirmed that there was a verbal altercation between his group and the occupants of the residence on South 47th Street, including those who had arrived in a white SUV with the victim as a passenger.

Morton told the officers that as the occupants of the SUV walked toward the porch, he saw that one of them had a gun in his hand. Further, Morton stated the woman driving the white SUV threatened to hit people with her SUV and then, in fact, did hit an individual with the SUV.

Morton stated that when the woman in the SUV was trying to hit people, he was running back toward the vehicle he had arrived in, but that the people in his group began yelling at him to shoot. Morton described facing the house, but walking backward toward the vehicle, when he pulled the gun out of his pocket and fired one shot toward the house.

Morton stated he was not aiming at anyone in particular, but was just pointing the gun in the direction of the house and porch. Morton did not claim to be aiming at the SUV in self-defense. There is no indication from the factual basis that the former passenger of the SUV, whom Morton had observed with a gun, had aimed it at Morton or anyone else in his group.

The district court accepted Morton's pleas, found the factual basis sufficient, and found Morton guilty. The court ordered a presentence investigation be completed and continued that matter for sentencing.

## Sentencing

Defense counsel noted at sentencing that Morton was "extremely remorseful" for the poor decisions he made, which

resulted in the "untimely death" of the victim, and that he fully acknowledged the seriousness of the particular situation. Defense counsel noted that these comments for sentencing were not to undermine the seriousness of the situation but to provide context and some mitigation for the court to consider in hopefully imposing lenient sentences.

Defense counsel stated that a number of factors present in this case warranted sentences of probation or a minimal period of incarceration. He highlighted the fact that Morton had no prior criminal record whatsoever and was only 16 years old at the time of the incident and 17 years old at sentencing. Based on Morton's age, defense counsel highlighted U.S. Supreme Court cases that discuss three primary factors that supported his argument that children should be treated differently than an adult, such as the following: Children lack maturity and have an underdeveloped sense of responsibility, children are more vulnerable to negative influences and outside pressure, and a child's character is not as well informed as an adult.

Further, defense counsel noted Morton's traumatic past experience in his life, in that Morton was 13 years old and home at the time his father was murdered in the living room. This traumatic situation and the lack of a constant, steady male influence in his life during the very formative years of his life rendered him incapable of properly responding to the violently escalating situation during this incident.

Defense counsel further pointed out that it was Morton's assertion he was not the one who originally obtained the gun used in this particular incident, that he did not have a reputation for carrying guns, that Morton was not involved in the original circumstances that led to the altercation, and that Morton believed he was responding to a perceived threat when he fired the shot.

Defense counsel also asserted Morton did not have any intent to kill the victim in this incident. Rather, the statements provided by Morton suggested that he fired one shot from across the street with a trajectory that was well over the heads

of anyone standing in the yard, but that the victim "was in an elevated position on the porch, and that's where the bullet ended up striking him."

Counsel asked the court to consider that during the 511 days Morton was at the juvenile detention center, he received 66 credits toward his high school diploma, underwent therapy and counseling, and received numerous positive reviews from various teachers. Counsel submitted to the court that Morton's efforts during his time at the juvenile detention center showed he is someone capable and willing for rehabilitation and requested the court impose probation or a minimal period of incarceration in order for Morton to have an opportunity for a meaningful and productive life. Morton's presentence investigation report (PSR) indicated he was at a medium-low risk to reoffend.

When Morton was given the chance to make a statement, he said, "I just want to take full responsibility for what I did. To the family, because I know how it feels to grow up without a father, I ask if they could forgive me for that, and yeah. So that's all I got to say."

The State asked for sentences of incarceration, noting that the social group conflict and handguns made it predictable that someone was going to get hurt or killed. The State pointed out that Morton pulled the trigger, that he took a life, and that there are consequences for that behavior.

The district court stated it considered the PSR, as well as a letter from defense counsel, the assessments, the private investigator's report, and character references from several sources. The court noted specifically that it took into consideration Morton's young age, but also that someone lost his life. The court observed that Morton had no criminal history. The court acknowledged that no sentence handed down would bring the victim back and that "[t]o say that this was a serious offense doesn't do it justice . . . ." The court commented on the extreme benefit Morton received as part of the plea agreement.

Ultimately, the court stated,

> Having regard for the nature and circumstances of the crime, the history, character, and condition of [Morton], I do find that imprisonment of [Morton] is necessary for the protection of the public because the risk is substantial, that during any period of probation, [he] would engage in additional criminal conduct, and because a lesser sentence would depreciate the seriousness of [his] crime and promote disrespect for the law.

The district court sentenced Morton to 15 to 20 years' imprisonment on count I and 30 to 40 years' imprisonment on count II, to be served consecutively, as § 28-1205(3) requires, with credit for 570 days served.

Morton appealed to the Court of Appeals, assigning that there was insufficient evidence to establish he possessed a firearm during the commission of a felony, that the district court abused its discretion in not imposing probation, that the terms of incarceration imposed by the district court were excessive, and that his trial counsel was ineffective by not objecting to the State's factual basis concerning the predicate felony for the possession of a firearm charge and by not having an expert witness evaluate Morton as to his development and behavior.

## Court of Appeals' Decision

The Court of Appeals found no merit in Morton's insufficient evidence and ineffective assistance of counsel claims and affirmed the district court's sentence of 15 to 20 years' imprisonment for Morton's manslaughter conviction.[5] However, the Court of Appeals found the district court abused its discretion in imposing a sentence of 30 to 40 years' imprisonment for Morton's possession of a firearm during the commission of a felony conviction and accordingly reduced it.

In finding an abuse of discretion regarding Morton's sentence on count II, the Court of Appeals acknowledged the

---

[5] *State v. Morton*, 29 Neb. App. 624, 957 N.W.2d 522 (2021).

facts in the PSR that addressed the customarily considered factors, but also compared the sentence imposed on Morton to different Nebraska cases which it determined involved similarly situated defendants convicted of like crimes.[6] The Court of Appeals found instructive the cases of *State v. Neuberger*[7] (20 to 20 years' imprisonment on manslaughter conviction with consecutive 10 to 15 years' imprisonment on firearm conviction); *State v. Iromuanya*[8] (25 to 35 years' imprisonment on attempted second degree murder conviction, life to life imprisonment on second degree murder conviction that was reduced to 50 years' to life imprisonment, and 10 to 20 years' imprisonment on each of two weapon convictions, all to be served consecutively); *State v. Aragon*[9] (concurrent terms of 14 to 20 years' imprisonment on each of two robbery convictions and concurrent sentence of 3 to 5 years' imprisonment on weapon conviction); and *State v. Bradley*[10] (number of serious sentences imposed across number of cases which included convictions for terroristic threats, weapons charges, and other charges). These cases involved convictions of possession of a firearm during the commission of a felony or use of a weapon to commit a felony and various underlying felonies committed by defendants from 16 years of age to 23 years of age.

Comparing these cases to the current one, the Court of Appeals determined that the district court did not abuse its discretion in sentencing Morton to 15 to 20 years' imprisonment for his manslaughter conviction, but found that the sentence of 30 to 40 years' imprisonment for the possession of

---

[6] *Id*.

[7] *State v. Neuberger*, No. A-13-411, 2014 WL 46420 (Neb. App. Jan. 7, 2014) (selected for posting to court website).

[8] *State v. Iromuanya*, 272 Neb. 178, 719 N.W.2d 263 (2006).

[9] *State v. Aragon*, No. A-17-450, 2018 WL 1597372 (Neb. App. Jan. 13, 2018) (selected for posting to court website).

[10] *State v. Bradley*, No. A-17-644, 2018 WL 3868987 (Neb. App. Aug. 14, 2018) (selected for posting to court website).

a firearm during the commission of a felony conviction was an abuse of the district court's discretion.

The Court of Appeals acknowledged that possession of a firearm during the commission of a felony carries with it a potential sentence of 1 to 50 years' imprisonment[11] and that no two criminal cases are alike, because unique factors may prove determinative when a court considers a sentence. However, the Court of Appeals, in comparing the facts and outcome of Morton's case to the other Nebraska cases discussed, found Morton's sentence to be an "extreme outlier."[12] It also found it "incongruous that the sentence for Morton's weapons conviction should be double that of his sentence for manslaughter" and believed that the "disproportionate nature of the two sentences" was "logically inconsistent" and that the disparity was not explained by the district court on the record.[13]

The Court of Appeals noted, further, that neither the factual basis nor the PSR showed Morton intentionally shot the victim, but, rather, that Morton's actions took place amidst a "chaotic, melee-like atmosphere" and that there was nothing to suggest that Morton aimed his gun at the house with the intent to harm any specific individual.[14] The Court of Appeals believed the factual basis "best support[ed]" the conclusion that the predicate felony for Morton's weapon conviction was unlawful discharge of a firearm, not manslaughter, for which Morton was convicted, or even assault.[15] However, the Court of Appeals did not reverse Morton's conviction of manslaughter, which was not challenged on direct appeal.

Especially considering Morton's young age and background and the fact that similarly situated defendants received significantly lower sentences on similar charges, the Court of

---

[11] Neb. Rev. Stat. § 28-105 (Reissue 2016).

[12] *State v. Morton, supra* note 5, 29 Neb. App. at 642, 957 N.W.2d at 537.

[13] *Id.*

[14] *Id*. at 643, 957 N.W.2d at 537.

[15] *Id.*

Appeals believed that the district court's reasons and rulings were untenable and that Morton was denied a just result in sentencing.[16] Accordingly, the Court of Appeals found Morton's sentence of 30 to 40 years' imprisonment on count II to be excessive and, through its statutory authority in Neb. Rev. Stat. § 29-2308(1) (Reissue 2016) that allows an appellate court to reduce a sentence rendered by the district court, reduced Morton's sentence on count II to a sentence of 10 to 15 years' imprisonment to run consecutively to the sentence imposed by the district court for Morton's manslaughter conviction.[17]

We granted the State's petition for further review.

## ASSIGNMENT OF ERROR

The State assigns that the Court of Appeals erred in finding that the district court abused its discretion in its sentence imposed for count II, possession of a firearm in the commission of a felony.

## STANDARD OF REVIEW

[1,2] A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court.[18] A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition.[19]

## ANALYSIS

Under § 29-2308(1), the appellate court "may" reduce the sentence rendered by the district court "when in its opinion the sentence is excessive." Where, as here, a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing

---

[16] *Id.*

[17] *State v. Morton, supra* note 5.

[18] *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021).

[19] *Id.*

court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.[20]

[3] It is well established that an appellate court will not disturb sentences within the statutory limits unless the district court abused its discretion in establishing the sentences.[21] When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles.[22]

[4,5] The relevant factors for a sentencing judge to consider when imposing a sentence are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.[23] The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.[24]

[6,7] We find that it was inappropriate for the Court of Appeals to second-guess the district court's discretion in sentencing Morton under the crime of possession with the predicate offense of manslaughter, by opining the State's factual basis "best" supported a crime he was not convicted of, unlawful discharge of a firearm.[25] So long as the facts provide a sufficient basis to find all elements beyond a reasonable

---

[20] *State v. Stabler*, 305 Neb. 415, 940 N.W.2d 572 (2020).

[21] *State v. Decker*, 261 Neb. 382, 622 N.W.2d 903 (2001).

[22] *State v. Greer, supra* note 18.

[23] See *id*.

[24] *Id*.

[25] § 28-1212.02.

doubt for the crimes the defendant is convicted of, whether an alternative crime fits those facts "best" is a matter of prosecutorial discretion and not a reason to question the trial court's sentence on the crimes found to have been committed. Prosecutorial discretion is an inherent executive power under which the prosecutor has the discretion to choose to charge any crime that probable cause will support or, if the prosecutor chooses, not to charge the accused at all.[26]

We also find the Court of Appeals' reasoning that "[t]here is no suggestion that Morton aimed his gun at the house with the intent to harm any specific individual" to be misleading.[27] The intent to harm a specific individual is not dispositive of the elements of manslaughter. Nor would it have been dispositive of second degree murder, which Morton was originally charged with.

[8] To illustrate, second degree murder requires causing the death of "a person" intentionally, but without premeditation.[28] In the context of a criminal statute, "intentionally" means willfully or purposely, and not accidentally or involuntarily.[29] But it is a fundamental maxim of criminal law that a trier of fact may infer that the defendant intended the natural and probable consequences of the defendant's voluntary acts.[30]

Thus, in *State v. Jones*,[31] we affirmed the defendant's convictions for first degree murder, use of a deadly weapon, and possession of a deadly weapon by a prohibited person (and his sentences of life imprisonment for murder plus 10 to 20 years' imprisonment on each of the other two convictions), when the victim was killed after an altercation turned physical, the defendant shot several shots into the air and then toward

---

[26] See *Polikov v. Neth*, 270 Neb. 29, 699 N.W.2d 802 (2005).

[27] *State v. Morton, supra* note 5, 29 Neb. App. at 643, 957 N.W.2d at 537.

[28] § 28-304(1).

[29] See, e.g., *State v. Erpelding*, 292 Neb. 351, 874 N.W.2d 265 (2015).

[30] See 1 Wayne R. LaFave, Substantive Criminal Law § 5.2(f) (3d ed. 2018).

[31] *State v. Jones*, 293 Neb. 452, 878 N.W.2d 379 (2016).

the house, and where the victim, who was not part of the altercation, had been standing on the porch. Similarly, in *State v. Moore*,[32] we affirmed the defendant's convictions for assault in the first degree and use of a weapon to commit a felony (and his sentence to two consecutive terms of 20 to 20 years' imprisonment), when, without taking any real "'aim,'" the defendant fired one shot toward a house with little indication anyone was home, the shot pierced the house, and it hit the victim who was sitting inside, paralyzing her.

[9] Under the factual basis presented here, a trier of fact could infer that Morton, intentionally firing a lethal weapon toward the front of the house and porch where several people were congregating, had intended to cause the death of "a person." While there was no evidence Morton intended to harm any specific individual, an indiscriminate killer is just as culpable as one who targets a specific person.[33] The Court of Appeals, by concluding the facts better fit the crime of unlawful discharge of a firearm, failed to recognize that the facts could support that level of culpability, and that they indisputably supported manslaughter, and thus, it was not an abuse of discretion for the court to impose a commensurate level of punishment.

[10] And while we note that the sentencing range for unlawful discharge is greater than that of manslaughter, it appears the Court of Appeals also used its reasoning as to what crime it believed better fit the facts to minimize the substantial benefit Morton received from the plea bargain agreement. The sentencing court took into account that but for his plea bargain agreement, Morton would have been facing a charge of second degree murder—in addition to unlawful discharge and two charges of use of a firearm—instead of the manslaughter and one count of possession of a firearm he was convicted

---

[32] *State v. Moore*, 276 Neb. 1, 3, 751 N.W.2d 631, 633 (2008).

[33] See *People v. Perez*, 50 Cal. 4th 222, 234 P.3d 557, 112 Cal. Rptr. 3d 310 (2010).

of pursuant to the agreement. In deciding the appropriate sentence, a sentencing court can account for the fact that the defendant received a substantial benefit from a plea bargain agreement.[34]

Under the mandatory minimum of 20 years' imprisonment for second degree murder, the mandatory minimum of 3 years for unlawful discharge, and the mandatory minimums of 5 years each for use of a firearm, running consecutively to the underlying felonies, Morton would have faced a mandatory minimum sentence of 33 years' imprisonment but for the plea bargain agreement. He would have been subject to a maximum term of life imprisonment for the charge of second degree murder alone and of 50 years' imprisonment for each of the other three charges. Under the amended complaint, in contrast, Morton was subject to a combined minimum of only 1 year's imprisonment and a combined maximum of 70 years' imprisonment. The sentencing court did not abuse its discretion in finding this significant.

[11] We find no support for the Court of Appeals' reasoning that it was "logically inconsistent" for Morton's sentence on the possession conviction to be "disproportionate[ly]" lengthy in relation to his sentence on the predicate felony of manslaughter. While often the predicate crime is the more serious crime, it is not necessarily so, and there is nothing in the statutory scheme requiring proportionality between the sentences imposed for the crimes of use or possession and the sentences imposed for their predicate offenses. Similar arguments have been rejected elsewhere.[35] We are unaware of any legal inquiry pertinent to review of a defendant's sentence, which

---

[34] See *State v. Elliott*, 21 Neb. App. 962, 845 N.W.2d 612 (2014). See, also, *State v. Gibbs*, 238 Neb. 268, 470 N.W.2d 558 (1991); *State v. Leek*, 192 Neb. 640, 223 N.W.2d 489 (1974); *State v. Weidenfeller*, 189 Neb. 505, 203 N.W.2d 784 (1973).

[35] See *State v. Roland*, 162 So. 3d 558 (La. App. 2015) (life imprisonment upon adjudication as third felony habitual offender not excessive, because sentences for predicate offenses were very light).

analyzes proportionality vis-a-vis different sentences for different crimes imposed for the same defendant and arising from the same series of events.

Instead, for a defendant who has been sentenced consecutively for two or more crimes, we generally consider the aggregate sentence to determine if it is excessive.[36] The "disproportionate" nature of Morton's sentence for possession was that the maximum sentence imposed by the court for manslaughter was the maximum allowable by law, and the court apparently believed the aggregate seriousness of the crime required a higher aggregate sentence than would be possible if the court imposed a sentence for possession that was less than the sentence for manslaughter. We find no abuse of discretion in so utilizing the statutory sentencing ranges available to it.

The Court of Appeals deemed Morton's sentence to be an "extreme outlier"[37] compared to the sentences imposed in the other cases that it found "instructive,"[38] but it did so by looking only at the crime of possession. While not necessarily agreeing with the conclusion reached by the Court of Appeals in doing so, when looking at Morton's sentence in the aggregate, it clearly is not an "extreme outlier."

In *Iromuanya*, for example, we said that the defendant's sentence to a maximum of life imprisonment for second degree murder was not excessive, because the defendant "arrived at the party carrying a loaded, concealed handgun and used it without justification to extinguish a life" in a "senseless act of violence."[39] We found excessive only the minimum term of life imprisonment, which left the defendant ineligible for parole, because the defendant had no significant criminal record or

---

[36] See, e.g., *State v. Becker*, 304 Neb. 693, 936 N.W.2d 505 (2019); *State v. Chairez*, 302 Neb. 731, 924 N.W.2d 725 (2019); *State v. Castaneda*, 295 Neb. 547, 889 N.W.2d 87 (2017).

[37] *State v. Morton, supra* note 5, 29 Neb. App. at 642, 957 N.W.2d at 537.

[38] *Id.* at 640, 957 N.W.2d at 535.

[39] *State v. Iromuanya, supra* note 8, 272 Neb. at 216, 719 N.W.2d at 295.

history of violence and "[t]he court could not have imposed a more severe minimum term for second degree murder on a hardened criminal with a lengthy history of violent felony convictions."[40] Here, in contrast, Morton was sentenced to a minimum of 15 years' imprisonment for manslaughter and 30 years' imprisonment for possession, for an aggregate minimum term of 45 years' imprisonment with parole eligibility in half that time.[41] We also note our decisions in *Jones*[42] and *Moore*[43] set forth above.

In any event, we have explained that "[t]he problem" with appellate courts conducting comparative analyses of appellants' sentences with sentences of "'similar'" cases "is the difficulty of determining that they were similar."[44] "Referring only to the printed opinions found in our published reports, we are not able to fully comprehend the facts and circumstances with which the sentencing judge had to deal."[45]

[12-14] Proportionality review conducted under the Eighth Amendment considers each sentence individually to determine whether it was grossly disproportionate to the crime.[46] We have held that a comparative analysis is not mandatory in a challenge under the Eighth Amendment and is "useful only to validate an initial judgment that a sentence is so grossly disproportionate to a crime as to be excessive."[47] Review of an excessive sentence claim under § 29-2308 is not subject to a higher standard. In the context of excessive sentence claims, we sometimes "refer[] to sentences imposed in other cases

---

[40] *Id.*

[41] See Neb. Rev. Stat. § 83-1,110 (Reissue 2014).

[42] *State v. Jones, supra* note 31.

[43] *State v. Moore, supra* note 32.

[44] *State v. Riley*, 242 Neb. 887, 893, 497 N.W.2d 23, 27 (1993). See, also, *State v. Reynolds*, 242 Neb. 874, 496 N.W.2d 872 (1993).

[45] *State v. Riley, supra* note 44, 242 Neb. at 893, 497 N.W.2d at 27.

[46] See *State v. Becker, supra* note 36.

[47] *State v. Riley, supra* note 44, 242 Neb. at 893, 497 N.W.2d at 27.

as a means of illustrating an abuse of discretion,"[48] but we have clearly held that appellate courts are under no duty to conduct a de novo review of the record to determine whether a sentence is proportionate.[49] To the contrary, once it is determined that the sentence prescribed by statute is constitutional and that the sentence imposed is within statutory limits, "the issue in reviewing a sentence is not whether someone else in a different case received a lesser sentence, but whether the defendant in the subject case received an appropriate one."[50]

In sentencing Morton, the district court was under no obligation to conduct a comparative analysis of "similar" cases—an inquiry that would be entirely impractical for trial courts to undertake. Instead, the court properly considered the PSR and accompanying letters, character references, and assessments. It acknowledged Morton's young age, but also focused on the fact that someone lost his life from Morton's actions. The court further took into consideration the "extreme benefit" that Morton received as part of the plea agreement in this case. The court acknowledged that Morton did not have any criminal history, but found that imprisonment of Morton was necessary for the protection of the public, taking into account the nature and circumstances of the crime and the history, character, and condition of Morton. The court believed "a lesser sentence would depreciate the seriousness of [Morton's] crime and promote disrespect for the law." There is no dispute that no part of the district court's sentence was outside of the relevant statutory range.

[15] A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition.[51] Morton's

---

[48] *State v. Philipps*, 242 Neb. 894, 897, 496 N.W.2d 874, 877 (1993).

[49] *Id.*

[50] *Id.* See, also, *State v. Sianouthai*, 225 Neb. 62, 402 N.W.2d 316 (1987).

[51] *State v. Greer, supra* note 18.

sentence properly reflected the seriousness of the crime committed and was supported by competent evidence. The fact of the matter is Morton traveled with several others to an adversary's dwelling in order to continue a fight that had started earlier that day, took a gun to the scene or took possession of the gun from someone else upon arrival, deliberately shot toward the porch where several individuals were present, and ultimately hit someone, taking that person's life. The power to impose sentences is entrusted to the sentencing court and not to an appellate court,[52] and the sentencing court did not abuse its discretion in the exercise of that power.

## CONCLUSION

We reverse the judgment of the Court of Appeals and remand the cause with direction to affirm the judgment of the district court.

REVERSED AND REMANDED WITH DIRECTION.

---

[52] See *State v. Philipps, supra* note 48.

---

CASSEL, J., concurring.

Mark Twain is reputed to have said that history does not repeat, but it often rhymes. In this court's decision today, which I join in full, one finds a familiar verse from an old theme.

It began with a trilogy of decisions by this court reversing decisions of the Nebraska Court of Appeals reducing sentences which had been imposed by trial courts.[1] In the first one, this court recognized that "minimum sentencing limitations are a matter for the Legislature, and a sentence imposed within those limitations a matter left to the discretion of the sentencing court."[2] The second one discounted comparative analysis of sentences except to "validate an initial judgment that a sentence is so grossly disproportionate to a crime as to

---

[1] See, *State v. Philipps*, 242 Neb. 894, 496 N.W.2d 874 (1993); *State v. Riley*, 242 Neb. 887, 497 N.W.2d 23 (1993); *State v. Reynolds*, 242 Neb. 874, 496 N.W.2d 872 (1993).

[2] *Reynolds, supra* note 1, 242 Neb. at 877, 496 N.W.2d at 874.

be excessive."[3] In the last decision, this court rejected the use of Neb. Rev. Stat. § 29-2308 (Cum. Supp. 1992) to reduce a sentence deemed excessive by the appellate court despite its acknowledgment that the sentencing court had not abused its discretion.[4] As pertinent to the situation here, the statute remains unchanged.[5]

A few years later, in reversing a Court of Appeals decision which had vacated probationary sentences and mandated imprisonment, this court relied upon an earlier decision holding that the same scope of review applies in the lenient sentence context as applies in the excessive sentence context.[6] Thus, this court determined, "regardless of whether an appellate court is reviewing a sentence for its leniency or for its excessiveness, a sentence imposed by a district court that is within the statutorily prescribed limits will not be disturbed on appeal unless there appears an abuse of the trial court's discretion."[7]

Only a short time after that, the Court of Appeals, with one dissent, captured its view of this court's then-recent precedent, stating that "'an appellate court . . . has an extremely limited review of sentences, and sentences within statutory limits are uniformly and routinely affirmed despite the appellate court's opinion of the sentence.'"[8] Thus, the majority said, "[s]o long as a trial court's sentence is within the statutorily prescribed limits, is supported by competent evidence, and is not based on irrelevant considerations, an appellate court cannot say that the trial court has abused its discretion . . . ."[9] The dissenting

---

[3] *Riley, supra* note 1, 242 Neb. at 893, 497 N.W.2d at 27.

[4] See *Philipps, supra* note 1.

[5] See § 29-2308(1) (Reissue 2016).

[6] See *State v. Harrison*, 255 Neb. 990, 588 N.W.2d 556 (1999) (citing *State v. Jallen*, 218 Neb. 882, 359 N.W.2d 816 (1984)).

[7] *Harrison, supra* note 6, 255 Neb. at 1000, 588 N.W.2d at 562.

[8] *State v. Ruisi*, 9 Neb. App. 435, 444, 616 N.W.2d 19, 27 (2000) (quoting *State v. Hopkins*, 7 Neb. App. 895, 587 N.W.2d 408 (1998)).

[9] *Ruisi, supra* note 8, 9 Neb. App. at 444, 616 N.W.2d at 26.

judge viewed the majority's language as having concluded that "any sentence—without exception—that is within statutory limits is not an abuse of discretion and thus not excessive."[10] Further review was not sought in that appeal.

Nonetheless, this court soon disapproved the *State v. Ruisi*[11] majority opinion to the extent it suggested that a sentence within statutory limits can never be the product of an abuse of discretion.[12] In doing so, this court quoted the *Ruisi* dissent's observation that "'[t]he Nebraska Supreme Court has left the door ajar—however slightly. It has not foreclosed any sentence within statutory limits from being excessive, but it strongly [has] suggest[ed] it is a rare exception.'"[13] This court also stated that the *Ruisi* dissent "sets forth an accurate characterization of the law by which appellate courts must review sentences claimed to be excessive."[14]

In the intervening years, instances of excessive or excessively lenient sentences have indeed been rare.[15] On similarly rare occasions, this court has on further review reversed an intermediate appellate court's conclusion that a sentencing court abused its discretion.[16] This suggests to me that both sentencing courts and intermediate appellate courts have largely embraced their respective roles. Yet, recalling these jurisprudential developments seems worthwhile, because, in words attributed to Winston Churchill, the farther backward you can look, the farther forward you are likely to see.

---

[10] *Id.* at 451, 616 N.W.2d at 31 (Buckley, District Judge, Retired, dissenting).

[11] *Ruisi, supra* note 8.

[12] *State v. Decker*, 261 Neb. 382, 622 N.W.2d 903 (2001).

[13] *Id.* at 398, 622 N.W.2d at 917 (quoting *Ruisi, supra* note 8 (Buckley, District Judge, Retired, dissenting)).

[14] *Decker, supra* note 12, 261 Neb. at 398, 622 N.W.2d at 917.

[15] See, e.g., *State v. Iromuanya*, 272 Neb. 178, 719 N.W.2d 263 (2006); *State v. Rice*, 269 Neb. 717, 695 N.W.2d 418 (2005).

[16] See, e.g., *State v. Gibson*, 302 Neb. 833, 925 N.W.2d 678 (2019); *State v. Griffin*, 270 Neb. 578, 705 N.W.2d 51 (2005).