Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/27/2024 09:14 AM CDT

**State of Nebraska, appellee, v.
Courtney L. Anderson, appellant.**

___ N.W.3d ___

Filed August 20, 2024.    No. A-23-638.

1. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

2. **Sentences.** When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime.

3. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

4. **Sentences: Appeal and Error.** When a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence imposed.

Appeal from the District Court for Lancaster County: Ryan S. Post, Judge. Affirmed.

Kristi J. Egger, Lancaster County Public Defender, and Todd C. Molvar for appellant.

Michael T. Hilgers, Attorney General, and Jordan Osborne for appellee.

Moore, Bishop, and Arterburn, Judges.

Bishop, Judge.

## INTRODUCTION

Courtney L. Anderson pled no contest to one count of misdemeanor child abuse. The charge stemmed from an incident at a daycare where Anderson worked. In the course of cleaning tables in a classroom after the children had snacks, Anderson used a spray bottle three separate times to spray its contents in the direction of a minor child's face. Anderson claimed the bottle contained only water. The daycare's owner reported that it contained a mixture of water and dish soap. Anderson had no criminal history, other than a traffic violation for speeding. A week before sentencing, Anderson gave birth to a son by cesarean section and was on maternity leave from her employment at a fitness center. The Lancaster County District Court sentenced her to 240 days in jail; Anderson's request for house arrest because her newborn was too young for daycare was denied. On appeal, Anderson claims that her sentence is excessive.

Although we conclude that a sentence of probation may have been more appropriate based on an examination of the relevant grounds listed in Neb. Rev. Stat. § 29-2260(3) (Reissue 2016), we cannot say that the district court abused its discretion by placing significant weight on Anderson's failure to take responsibility for her actions, along with the nature of the offense. Further, although the Nebraska Legislature has provided for a presumption of probation for Class IV felonies absent substantial and compelling reasons why an offender could not effectively and safely be supervised in the community, see Neb. Rev. Stat. § 29-2204.02(2) (Reissue 2016), there is no such presumption for Class I misdemeanors. We therefore affirm Anderson's conviction and sentence.

## BACKGROUND

On May 17, 2023, the State filed an information alleging that on December 9, 2022, Anderson "knowingly and

intentionally" caused or permitted a minor child, J.W., to be (a) placed in a situation that endangered his physical health, (b) cruelly punished, or (c) deprived of necessary care. Anderson was charged with one count of child abuse, a Class IIIA felony, pursuant to Neb. Rev. Stat. § 28-707 (Cum. Supp. 2022). On June 16, 2023, the State filed an amended information, alleging that Anderson negligently caused or permitted J.W. to be placed in a situation that endangered his physical health. The amended information reduced the child abuse charge from a Class IIIA felony to a Class I misdemeanor, pursuant to the same statute. At a hearing that same day, Anderson, pursuant to a plea agreement, pled no contest to the charge in the amended information. The State provided the following factual basis for the plea:

[T]he owner of the . . . Child Development Center and Daycare . . . reported to the Lancaster County Sheriff's Office that she had observed a suspected child abuse, which occurred on December 9th of 2022.

[The owner] stated that after that date she had received a call from . . . a parent of a child who attends the daycare, indicating that that child had witnessed a teacher spray another child with a spray bottle.

[The owner] reviewed the video surveillance and found that at 9:28 a.m., she observed the defendant, . . . Anderson, an employee at the daycare, place a child born in 2019, a minor child with the initials J.W. in a corner on a mat, which appeared to be for disciplinary purposes. [Anderson] then obtained a spray bottle which contained a soap and water cleaning solution and sprayed the child, J.W. in the face. [Anderson] cleaned a table with the solution and then returned to spray J.W. in the face again. [Anderson] cleaned an additional table with the spray bottle solution before returning a third time to spray J.W. in the face again.

J.W. turned his head and placed his hand in front of his face as a result of the soapy solution being sprayed

in his face. He had red watery burning eyes as a result of being sprayed in the face. His mother expressed that J.W.'s eyes were bothering him the night of the incident as well.

[Anderson] was contacted and stated that she had been spraying a toy barn in the daycare that was near J.W. And she stated the barn made a noise when the bottle was sprayed.

This was inconsistent with the officer's view of the video surveillance from it.

Those events did occur in Lancaster County, Nebraska. The district court accepted Anderson's plea of no contest to the charge in the amended information and found her guilty of the same. The case was set for sentencing.

The sentencing hearing took place on August 16, 2023; we will set forth the arguments and comments made at that hearing below. The district court sentenced Anderson to 240 days in jail, with 2 days' credit for time served.

Anderson appeals.

## ASSIGNMENT OF ERROR

Anderson assigns that the sentence imposed by the district court was excessive and constitutes an abuse of discretion.

## STANDARD OF REVIEW

[1] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020).

## ANALYSIS

### State's Motion for Summary Disposition

After Anderson filed her brief on appeal, the State filed a motion requesting that this court summarily affirm Anderson's conviction and sentence pursuant to Neb. Ct. R. App. P. § 2-107(B)(2) (rev. 2022) (questions presented for review are so unsubstantial as not to require argument). This is a

common practice by the State in criminal appeals when the only error assigned on appeal is that the sentencing court abused its discretion by imposing an excessive sentence. And it is often the case that this court will summarily affirm the judgment of the trial court given the limitations of an abuse of discretion standard of review, as established by the Nebraska Supreme Court. See *State v. Morton*, 310 Neb. 355, 966 N.W.2d 57 (2021) (Cassel, J., concurring) (rare exception that sentence within statutory limits is excessive). The State's request in this instance was declined.

## ANDERSON'S CONVICTION AND SENTENCE

Anderson was convicted of one count of misdemeanor child abuse. There was no allegation of serious bodily injury. Section 28-707 states, in relevant part:

(1) A person commits child abuse if he or she knowingly, intentionally, or negligently causes or permits a minor child to be:

(a) Placed in a situation that endangers his or her life or physical or mental health;

. . . .

(3) Child abuse is a Class I misdemeanor if the offense is committed negligently and does not result in serious bodily injury as defined in section 28-109 [bodily injury which involves substantial risk of death or serious permanent disfigurement or protracted loss or impairment of function of any part or organ of body] or death.

(4) Child abuse is a Class IIIA felony if the offense is committed knowingly and intentionally and does not result in serious bodily injury as defined in section 28-109 or death.

As indicated previously, the amended information alleged that Anderson negligently caused or permitted J.W. to be placed in a situation that endangered his physical health, making the offense a Class I misdemeanor. A Class I misdemeanor is punishable by up to 1 year of imprisonment to be served in the

county jail, a $1,000 fine, or both. See Neb. Rev. Stat. § 28-106 (Reissue 2016). The district court sentenced Anderson to 240 days in jail. Anderson claims that the sentence imposed by the court was excessive and constitutes an abuse of discretion. Since the sentence was within the statutory range for a Class I misdemeanor, we review the court's sentencing determination only for an abuse of discretion.

## Sentencing Considerations

[2,3] When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Lierman, supra*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Anderson was 30 years old at the time of sentencing. According to the presentence report (PSR) submitted on August 9, 2023, Anderson was single but was living with her partner of 10 years and their 6-year-old child. At the time of the report, Anderson was pregnant with their second child. Anderson obtained an associate degree in early childhood education in 2015. She had been working at a fitness center since January 2023; her employer at the fitness center indicated that Anderson was reliable, hardworking, and responsible. Anderson previously worked at the daycare (where this offense occurred) for 7 months but was fired because of the reported incident. Prior to that, Anderson worked at a different daycare for many years; what appears to be a reference letter from that previous employer dated just prior to the spray bottle incident indicates that Anderson was "reliable and punctual," "worked hard," was "flexible and willing to help," and had a "caring personality."

Other than the current offense, Anderson's criminal history includes only one speeding violation, which occurred in 2016 and resulted in a $25 fine.

The law enforcement reports contained in the PSR provide additional information related to the current offense. They indicate that J.W.'s mother also worked at the same daycare as Anderson. Both the daycare owner and J.W.'s mother were reviewing the video of the incident when law enforcement arrived to investigate. J.W.'s mother was asked if she "wished" for J.W. "to be the victim of child abuse" and she stated that she did. The mother indicated that J.W.'s eyes "were red, watery, and burned from the solution being sprayed in them the evening after the incident." J.W.'s mother was asked to provide a picture of J.W.'s eyes the next day. (We note that the picture included in the PSR does not reveal any redness or irritation in or around J.W.'s eyes.) A couple days later, contact was made with the daycare owner to collect the spray bottle used during the incident. The bottle was filled "approximately 3/4's the way full with a clear fluid" that the daycare owner described as "Dawn Dish Soap and water."

The law enforcement reports indicate that Anderson denied intentionally spraying the child in the face. However, she acknowledged there was a possibility he may have been sprayed when she was attempting to make the children laugh by spraying the bottle near a toy barn that made noise when sprayed. Her statement in the PSR indicates that the toy barn had been making noises because "'its batteries were dying'" and that when she walked past it, the children thought she was "'magically setting it off.'" After redirecting J.W., she was cleaning a table when a child suggested she spray water by it to see if it would set it off, and it did, so she was asked to do it a couple more times. During her PSR interview, she reported that the bottle contained only water and that she "'wasn't cautious of [her] surroundings.'" She stated, "'It was a huge misunderstanding that turned very serious.'"

Our review of the daycare video, which has no audio, reveals the following. At about 9:24 a.m., Anderson is sitting at her desk while the children are having snacks at tables. J.W. is interacting with another child, and he can be seen sucking his thumb and loitering around the coat lockers near his table. Anderson heads toward J.W., and he immediately sits back in his chair. It appears the children are then directed to stop what they are doing and head toward a large colorful floor mat. J.W. goes to the mat area and is seen playing with a toy on top of a counter next to the mat. At 9:28:09 a.m., Anderson takes J.W.'s arm and sits him down in the corner on the mat. J.W. immediately appears to start crying (throws his head back with his mouth open); one child and then another child start covering their ears. This is before Anderson sprays anything in J.W.'s direction. At 9:28:27 a.m., Anderson walks across the mat and sprays the bottle from a couple feet away toward J.W. as she walks toward the tables. J.W. puts his head down in reaction and briefly puts his right fist near his right eye. Anderson sprays a table, then returns to the edge of the mat where another child is sitting at 9:28:39 a.m. and reaches forward to spray J.W. again from a couple feet away; he turns away. There is no wiping motion by J.W. after this spray. Anderson goes to spray another table, then walks across the mat and sprays J.W. again at 9:28:52 a.m. from about a foot away. J.W. briefly puts his head down and then sucks his thumb; no wiping of the face is seen.

The probation officer conducted a "Level of Service/Case Management Inventory." With a "score of six" on the inventory, Anderson was assessed as an overall low risk to reoffend. She scored as a medium risk in the criminogenic risk factor domains for leisure/recreation and procriminal attitude; a low risk in the domains for family/marital and antisocial patterns; and a very low risk in the domains for criminal history, education/employment, companions, and alcohol/drug problems.

The probation officer stated:

Anderson described the present offense as a misunder-
standing and the video that depicts the present offense
looks worse than it was. She stated at the time of the pres-
ent offense, she was spraying at a toy that the children
were being entertained with and she was not cautious
of her surroundings. She stated she had no ill intentions
during the time; however, . . . Anderson did appear to be
remorseful.

Included in the PSR were seven letters in support of
Anderson. Among the letters was one from a parent of a
child at the daycare when the current offense occurred; the
parent wrote that he had "been incredibly impressed with
[Anderson's] level of professionalism, her dedication to her
job, and exceptional caregiving skills." Anderson's former
employer at a different daycare wrote that Anderson's "car-
ing personality and demonstrated common sense make her a
great choice for working with your children." Three letters
were written by Anderson's former coworkers: one wrote that
Anderson "was always patient, compassionate, and nurturing
with the children under her care, and she worked tirelessly to
create a safe and welcoming environment for them to learn
and grow"; another wrote that Anderson "was very patient and
attentive with the children she cared for" and that Anderson
had "been an outspoken advocate in the past when children
were being mistreated."

Also included in the PSR was a letter written by the owner
of the daycare where Anderson's current offense occurred. The
owner wrote:

[Anderson] has a habit of never taking responsibility for
her actions and will get very confrontational and argu-
mentative when provided with suggestions on how to bet-
ter do her job. We had notified [Anderson] on Monday,
December 5th that she would be removed as the Lead
Preschool Teacher at the end of that week due to her
failure to properly follow her job description and teach

the children in her care. The incident that she is being sentenced for occurred on Friday, December 9th.

. . . .

In conclusion, I want to express my disappointment that [Anderson] was allowed to plea this charge down from a felony. . . . The Lancaster County Sheriff's Deputy that responded to [the daycare] initially stated that he would be ticketing [Anderson] for a misdemeanor. After leaving [the] facility, he notified me that he reread the statutes, and determined that her actions constituted a felony charge. As a result of her arrest . . . numerous news stations picked up the story and began harassing my employees and daycare families. . . . My staff were scared to leave the building for their breaks. We kept children locked up inside the building for fear of who was lurking in our parking lot. It was a very stressful and scary time for all of us. . . . It upsets me that my business has been viewed as the "bad guy" in all of this mess. No one will remember . . . Anderson's name in a few months, but they will remember that [the daycare] had an employee that abused children. Now that employee is being allowed to walk away with just a slap on the wrist. There are days that I regret turning her into authorities because my business is the one that had to suffer with the consequences of [Anderson's] actions.

### SENTENCING HEARING

At the sentencing hearing, the State said that when determining the sentence, the district court should take into consideration that Anderson "still does not accept any responsibility for this offense" and "is still sticking to this story that this toy barn was making this noise and making the children laugh." The State argued that the video "tells a very different story than what . . . Anderson is portraying."

Anderson's counsel noted that Anderson had only one prior speeding ticket on her criminal history, "[t]hat's it," and

"[s]he's not a risk to reoffend." Counsel stated that Anderson goes to weekly counseling. Additionally, she "just recently gave birth to a new child . . . within the past week." Counsel said that Anderson was asking for a term of probation, and counsel saw no reason why Anderson could not successfully complete probation. Counsel stated that if the district court was considering a jail sentence, then it should also consider Anderson's current family situation and allow her to apply for house arrest and defer any jail sentence imposed. Counsel noted that Anderson's newborn "isn't eligible for childcare" due to the child's age.

The district court asked Anderson if she had anything to say before sentence was imposed. Anderson initially replied, "I think I've said everything that I have to say, Your Honor." She subsequently also informed the court about her recent cesarean section and that she was in counseling "to better [herself] as a person." She noted that she was nursing her newborn and that he could not be placed in daycare for 6 weeks because "childcare doesn't take anybody under six weeks."

The district court stated that it had read and reviewed the PSR, and had considered the comments of Anderson's counsel, the character letters, and the relevant statutory factors. As to the current offense, the court said:

> I certainly understand a lapse in judgment. And I also understand being frustrated with young children. But, the — we got more than problem [sic] going on here. You've taken no responsibility for what happened. I watched the video, I think, five times. I watched it two or three times, and then I read your information, your letter, and then I watched it again at least twice to see if it was consistent with your story. And it's just not.
>
> It — it's kind of astounding to me that someone with your history, which is — which has a good history, is doubling down on this. And you sprayed the child in the face three times. Nothing — it's just — it's very

frustrating to me that we're in this situation. It should not have happened.

And you violated the trust of the child in your care, the parents of the child. I can't even imagine how confused the other children were, the way they were lined up and they could see the incident.

Thankfully, one of the other children said something to their parents and that, you know, thankfully, the preschool owner acted right away and reported it. . . .

It's a lapse in judgment, but it's completely unacceptable. The court stated that "at the end of the day, it is a very serious offense." It then sentenced Anderson as previously set forth.

## ARGUMENTS ON APPEAL

[4] In her brief on appeal, Anderson claims the district court abused its discretion by imposing an excessive sentence, and she submits that probation or a lesser term of imprisonment would have been a fair and just sentence. She directs us to Neb. Rev. Stat. § 29-2308(1) (Reissue 2016), which states, in part:

> In all criminal cases that now are or may hereafter be pending in the Court of Appeals or Supreme Court, the appellate court may reduce the sentence rendered by the district court against the accused when in its opinion the sentence is excessive, and it shall be the duty of the appellate court to render such sentence against the accused as in its opinion may be warranted by the evidence.

The Nebraska Supreme Court has construed this statutory language to mean that an appellate court "'may' reduce the sentence rendered by the district court 'when in its opinion the sentence is excessive.'" *State v. Morton*, 310 Neb. 355, 365, 966 N.W.2d 57, 66 (2021). However, when a sentence is imposed within the statutory limits, "the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence

to be imposed." *Id*. at 365-66, 966 N.W.2d at 66. In *State v. Morton, supra*, this court reduced one of the defendant's sentences, finding that the trial court abused its discretion as to that sentence; however, on petition for further review, the Supreme Court reversed our decision. As pointed out by the concurrence in *Morton*, the Supreme Court "has left the door ajar—however slightly. It has not foreclosed any sentence within statutory limits from being excessive, but it strongly [has] suggest[ed] it is a rare exception." 310 Neb. at 375, 966 N.W.2d at 71 (Cassel, J., concurring) (internal quotation marks omitted).

Citing to § 29-2260(2), Anderson further argues that "[i]f mandatory imprisonment is not specifically required, the court may withhold a sentence of imprisonment, unless the court finds imprisonment is necessary for [the] protection of the public." Brief for appellant at 11. Section 29-2260(2) provides:

Whenever a court considers sentence for an offender convicted of either a misdemeanor or a felony for which mandatory or mandatory minimum imprisonment is not specifically required, the court may withhold sentence of imprisonment unless, having regard to the nature and circumstances of the crime and the history, character, and condition of the offender, the court finds that imprisonment of the offender is necessary for protection of the public because:

(a) The risk is substantial that during the period of probation the offender will engage in additional criminal conduct;

(b) The offender is in need of correctional treatment that can be provided most effectively by commitment to a correctional facility; or

(c) A lesser sentence will depreciate the seriousness of the offender's crime or promote disrespect for law.

Section 29-2260(3) goes on to list various "grounds," which "while not controlling the discretion of the court, shall be accorded weight in favor of withholding [a] sentence of

imprisonment" by a sentencing court. The grounds listed in § 29-2260(3) that are most relevant here include:

(a) The crime neither caused nor threatened serious harm;

(b) The offender did not contemplate that his or her crime would cause or threaten serious harm;

. . . .

(g) The offender has no history of prior delinquency or criminal activity and has led a law-abiding life for a substantial period of time before the commission of the crime;

(h) The crime was the result of circumstances unlikely to recur;

(i) The character and attitudes of the offender indicate that he or she is unlikely to commit another crime;

(j) The offender is likely to respond affirmatively to probationary treatment; and

(k) Imprisonment of the offender would entail excessive hardship to his or her dependents.

Anderson argues that the district court "failed to properly consider [her] mentality, the fact that the sentence imposed would entail excessive hardship to [her] dependents, [her] record of law-abiding conduct, and the possibility of rehabilitation." Brief for appellant at 9. She notes that she had worked in childcare since 2010 and that "[i]n that time, her coworkers and parents of the children she cared for trusted and respected [her,] as demonstrated by the seven character letters in her [PSR]." *Id.* at 13.

In considering the relevant sentencing factors, the district court specifically mentioned Anderson's mentality and record of law-abiding conduct, and it stated that it understood what was currently going on in her life, including the fact that she had just had a baby. However, the court was troubled that Anderson had taken "no responsibility for what happened." The court watched the video multiple times "to see if it was consistent with [Anderson's] story," and it was "just not."

While noting Anderson's "good history," the court was concerned that Anderson was "doubling down on this." It pointed out that Anderson "sprayed the child in the face three times," and the court stated that "it's very frustrating to [the court] that we're in this situation. It should not have happened."

When applying the grounds listed under § 29-2260(3) as set forth above to Anderson, many of the considerations weighed in favor of withholding imprisonment. Anderson did not contemplate that her action would cause or threaten serious harm, nor did it do so; Anderson has no prior criminal history, other than a traffic violation, and she has led a law-abiding life; Anderson would likely respond affirmatively to probationary treatment; and imprisonment would cause excessive hardship to her children, although the children's father would be available to them. Additionally, imprisonment of Anderson was not necessary for the protection of the public. See § 29-2260(2). Based upon these statutory factors, a sentence of probation could have been appropriate.

However, it appears that the district court was very troubled by Anderson's failure to take responsibility for her actions, as well as the nature of the offense. Anderson's unwillingness to acknowledge her actions go to her character and attitude and may be perceived as an indicator for future poor judgment, even if these particular circumstances are unlikely to recur. We agree with the court that the daycare video does not support Anderson's version of the incident. It may have benefited Anderson to simply acknowledge a lapse in judgment. No serious harm was done to J.W.; however, spraying a mixture of water and dish soap in the direction of his face was wrong. While imprisonment of Anderson may not have been necessary for the protection of the public, the district court considered this a "very serious offense." It pointed out that Anderson brought "a lot of scrutiny" onto the daycare due to "everything" she did, and "nothing they did."

Although we cannot say that the district court abused its discretion, this court would have preferred to see a

sentence of probation in view of most of the relevant grounds under § 29-2260(3) favoring the withholding of incarceration. However, like the district court, we are troubled by Anderson's unwillingness to simply accept responsibility for her wrongful behavior. Whether Anderson's unwillingness to be truthful about the spray bottle incident should override the § 29-2260(3) factors that weighed against incarceration is a discretionary determination best left to the sentencing court. See *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020) (appropriateness of sentence is necessarily subjective judgment and includes sentencing judge's observation of defendant's demeanor and attitude). Therefore, although this court views the record and applicable law to favor probation, we cannot say the district court abused its discretion by ordering 240 days of jail time.

## NO PRESUMPTION OF PROBATION

For the sake of completeness, we note that there is a presumption of probation for Class IV felonies, see § 29-2204.02(2), but there is no such presumption for Class I misdemeanors. Under § 29-2204.02(2), the sentencing court shall impose a sentence of probation for a Class IV felony unless there are substantial and compelling reasons that community supervision will not be an effective and safe sentence. See *State v. Baxter*, 295 Neb. 496, 888 N.W.2d 726 (2017). In the present case, if the presumption of probation was applicable for this Class I misdemeanor like it is for a Class IV felony, the record would not likely have demonstrated substantial and compelling reasons to overcome the presumption of probation. It is curious that the Legislature has chosen to give a presumption of probation for more serious felony offenses, but not for lesser misdemeanor offenses.

## CONCLUSION

For the reasons set forth above, we affirm Anderson's conviction and sentence.

AFFIRMED.