IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. WILLIAMS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

AUSTIN R. WILLIAMS, APPELLANT.

Filed December 28, 2021.    No. A-21-099.

Appeal from the District Court for Dodge County: MARK A. JOHNSON, Judge. Affirmed.

James N. Scarff and Kyle J. Flentje, of Scarff Law Firm, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

MOORE, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Following a jury trial, Austin R. Williams was convicted of one count of third degree sexual assault of a child. He was found not guilty of three counts of first degree sexual assault of a child and one count of incest. Based upon the jury's verdict, the Dodge County District Court sentenced Williams to 30 months' imprisonment and 18 months' post-release supervision on his conviction for third degree sexual assault of a child. Williams appeals from his conviction and sentence, claiming that the evidence was insufficient to support his conviction and that his sentence was excessive. We affirm.

## II. BACKGROUND

This case arises from allegations that from August 2015 through August 1, 2018, Williams sexually assaulted his stepdaughter, E.T., when she was between the ages of 12 and 14. E.T. initially disclosed the abuse during an interview at the Family Advocacy Network in early August

- 1 -

2018. At the time of her disclosure, E.T. was visiting her biological father and stepmother at their home in Kearney, Nebraska. At that time, E.T.'s biological mother, Erika, was her custodial parent. Williams was married to Erika. E.T., Erika, and Williams lived in Fremont, Nebraska, with E.T.'s half sister, A.V.-L.

On March 29, 2019, the State filed an initial information in the district court charging Williams with count I, first degree sexual assault of a child, a Class IB felony, in violation of Neb. Rev. Stat. § 28-319.01(1)(b) and (2) (Reissue 2016); count II, first degree sexual assault of a child, a Class IB felony, in violation of § 28-319.01(1)(b) and (2); count III, attempted first degree sexual assault of a child, a Class II felony, in violation of Neb. Rev. Stat. § 28-201 (Reissue 2016) and § 28-319.01(1)(b) and (2); count IV, incest, a Class IIA felony, in violation of Neb. Rev. Stat. § 28-703 (Reissue 2016); and count V, third degree sexual assault of a child, a Class IIIA felony, in violation of Neb. Rev. Stat. § 28-320.01 (Reissue 2016). E.T. was the named victim for each of the charges. Williams pled not guilty to all counts.

The State subsequently filed an amended information in January 2020. This amended information changed count III of the initial information such that it now alleged that Williams had committed first degree sexual assault of a child, rather than attempted first degree sexual assault of a child. The other charges alleged in the initial information remained unchanged.

Trial was held on the charges contained in the amended information over the course of 10 days in August and September 2020. At trial, the State presented the testimony of multiple witnesses, including, E.T.; E.T.'s stepmother; E.T.'s paternal grandmother; Erika; A.V.-L.; two law enforcement officers who investigated E.T.'s allegations of sexual assault; the forensic interview specialist who conducted the interview where E.T. first disclosed the sexual assaults; and Dr. Barbara Sturgis, an expert on children's disclosure of sexual assault. Because the only direct evidence of the sexual assaults was E.T.'s testimony, we focus our recitation of facts on such evidence.

By the time of the trial, E.T. was 16 years old and a junior in high school. She lived with her biological father and stepmother in Kearney. E.T. testified that Williams began sexually assaulting her in December 2016, when she was 12 years old. E.T. indicated that at that time, Williams would intentionally touch her breasts, sometimes over her clothes and sometimes under her clothes. In fact, Williams instructed E.T. not to wear a bra to bed at night. Such touching occurred approximately one time per week.

E.T. testified that the sexual abuse escalated one night in March 2017 when Williams returned home drunk from a party with his coworkers and her mother was not at home. E.T. explained that when Williams arrived home, he came into her room and sat on her bed where she had previously been sleeping. He then began to touch her breasts and kissed her on her lips, putting his tongue inside of her mouth. Williams also "suck[ed]" on her breasts and started to put his hand down her pants. At this point, Williams' cellular telephone rang and he stopped the assault. E.T. testified that during this incident, A.V.-L., who was then 10 years old, was asleep in her bed in the same room.

During A.V.-L.'s testimony, she contradicted E.T.'s account of the March 2017 incident. A.V.-L. recalled that both she and E.T. were awake when Williams arrived home from the party. A.V.-L. testified that upon arriving home, Williams was speaking with Erika on his phone. In fact, A.V.-L. indicated that both she and E.T. also spoke with Erika during this phone call. A.V.-L.

denied that Williams ever went into the bedroom she shared with E.T. on that night. She also denied observing Williams kiss or assault E.T. on that night. During Erika's testimony, she generally corroborated A.V.-L.'s version of that night. Erika indicated that she was talking with Williams on the phone when he arrived at home and that she knew the girls were awake because she could hear them in the background. She then spoke with them. During an interview with police, Williams stated that he did not recall sexually assaulting E.T. As to the March 2017 incident, he admitted that he was drunk and said that while the assault was possible, it was not probable.

E.T. testified that approximately 1 week after the March 2017 assault, Williams resumed touching her breasts on a weekly basis. He also began to touch her vaginal area with his hand and "sometimes" digitally penetrated her. Additionally, on a "handful" of occasions, Williams made E.T. place her hand on his penis and sexually stimulate him. On the few occasions that Williams would ejaculate, he would place his ejaculate in E.T.'s mouth. Williams asked E.T. to put his penis in her mouth, but she never did so. E.T. testified that these sexual assaults often occurred under a blanket on a couch in the main living area of her family's apartment. Sometimes, A.V.-L. would be on the floor in front of the couch when the assaults occurred. During her testimony, A.V.-L. stated that she would have noticed if the sexual assaults occurred when she was in the same room. Similarly, Erika generally testified about the lack of privacy in the apartment due to the layout and what she perceived to be the limited amount of time Williams was completely alone with E.T.

E.T. testified that during the early part of 2018, Williams inserted his penis into her vagina for the first time. Such incident occurred in Williams' bed after he texted E.T. to come wake him up. During that same incident, Williams again touched E.T.'s breasts with his hands and with his mouth.

Sometime during the summer of 2018, when E.T. returned to Fremont after staying with her biological father in Kearney for his summer parenting time, E.T. attended a volleyball conditioning camp at her school. E.T. indicated to Williams that her legs were sore due to the conditioning. Williams offered to massage her legs and apply a pain relieving cream. E.T. went to Williams' bedroom and he told her to take her pants off and lay down on her stomach on the bed. According to E.T., Williams was already naked from the waist down. He began to massage her thighs and partially inserted his penis into her rectum and then into her vagina. E.T. indicated she then got up, put her pants back on, and left the room.

Although E.T. indicated during her direct testimony that Williams had only inserted his penis into her vagina or anus on two occasions, on cross-examination she testified to other instances wherein she reported an incident to law enforcement in which Williams had attempted penetration. In one such instance, E.T. described to law enforcement that Williams took off her pants and underwear when she was laying on the couch watching a movie. He then tried to insert his penis into her vagina. A.V.-L. was laying directly in front of the couch on the floor during this incident. Erika testified that she was also present and sitting on the couch when the family watched the movie. She testified that the sexual assault was simply not possible. E.T. also testified to another event wherein Williams digitally touched her in the area of her vagina as well as her breasts while watching a movie. With regard to this incident, she stated she did not recall whether Williams actually inserted his penis.

E.T. testified that Williams had previously told her that he was falling in love with her. She also testified that when she was away from Williams he would constantly send her text messages

indicating how much he loved her and missed her. She described how Williams took her on a "date" when she was staying with her biological father in Kearney. However, according to Erika, Williams took both E.T. and A.V.-L. to dinner and a movie in Kearney. According to E.T., Williams would become very upset when she mentioned boys her own age. A.V.-L. testified that she had not gone to a movie with E.T. and Williams in Kearney.

E.T. explained that she did not reveal the abuse for a long time because she was worried about how Erika and A.V.-L. would react. She was also worried that Williams would lose his job as a police officer. She did not want anyone to think differently of her.

During her cross-examination, E.T. admitted that when she initially disclosed the abuse in the Family Advocacy Network interview, she lied by not revealing everything that had happened between her and Williams. Instead, she only indicated that Williams had touched her inappropriately over her clothing on one occasion. She also indicated during that initial disclosure that she was comfortable around Williams, that she felt safe with him, and that they had a good father-daughter relationship. Only later on did E.T. indicate that Williams treated her as his girlfriend, rather than as his daughter, and that he was constantly jealous, angry, and overprotective. E.T. also admitted that the details about the sexual assaults had changed as time went on and as she grew more comfortable talking about the abuse.

Sturgis, a clinical psychologist, testified that when children suffer sexual abuse, they "don't tell about sexual abuse right away. When they do tell, they don't tell everything, and some never tell at all." She further testified that children typically disclose information about the abuse "a little at a time." She explained that it was not at all unusual for children to wait years before disclosing the abuse. Sturgis indicated that false reporting of sexual abuse by children is rare, but not impossible.

At the close of the evidence, the case was submitted to the jury. During the deliberations, the jury asked the following question of the court: "If we are not unanimous for guilty do we return a not guilty verdict or do we need to be unanimous for a not guilty?" After discussing the question with counsel for the State and for the defense, the district court provided the jury with the following written response: "You need to be unanimous for a guilty verdict. You do not need to be unanimous for a not guilty verdict." Moments after receiving this response from the court, the jury returned with their verdict. The jury found Williams guilty of count V, third degree sexual assault of a child. The jury found Williams not guilty of the remaining four counts.

In January 2021, the district court sentenced Williams to 30 months' imprisonment followed by 18 months' post-release supervision for his conviction for third degree sexual assault of a child.

Williams appeals from his conviction and sentence.

## III. ASSIGNMENTS OF ERROR

On appeal, Williams assigns and argues that the evidence was insufficient to support his conviction and that the district court erred in imposing an excessive sentence.

In his brief to this court, Williams also assigns as error that the district court applied the sentencing factors listed in Neb. Rev. Stat. § 29-2260 (Reissue 2016) in a manner that is contrary to Article I, section 15, of the Nebraska Constitution. However, Williams does not argue his constitutional claim in the analysis section of his brief. Rather, Williams simply argues that given

the facts and circumstances of the case, the district court erred in failing to impose a sentence of probation rather than a sentence of incarceration. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the initial brief of the party asserting the error. *State v. Gray*, 307 Neb. 418, 949 N.W.2d 320 (2020). Nonetheless, his argument that he should have been sentenced to a term of probation rather than to a term of incarceration will be addressed in the context of his excessive sentence claim.

## IV. ANALYSIS

### 1. SUFFICIENCY OF EVIDENCE

### (a) Standard of Review

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: in reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Wheeler*, 308 Neb. 708, 956 N.W.2d 708 (2021).

### (b) Analysis

In his brief on appeal, Williams asserts that the evidence presented at trial was insufficient to support his conviction for third degree sexual assault of a child. Specifically, he claims that the investigation conducted by law enforcement was too cursory and that E.T.'s testimony was contradicted both by her own previous statements and by the testimony of Erika and A.V.-L.

Before we analyze Williams' specific claims regarding why the evidence was insufficient to support his conviction for third degree assault, we must first address two issues which necessarily affect this analysis. First, we feel it necessary to discuss the error which occurred during the jury deliberations. As we discussed above, when the jury asked whether a not guilty verdict had to be unanimous, the district court responded that only a guilty verdict must be unanimous. This is simply incorrect. In a criminal case, a jury's verdict must be unanimous. See *State v. Hochstein and Anderson*, 262 Neb. 311, 632 N.W.2d 273 (2001). We note that in instruction No. 18 given to the jury, the district court gave the standard closing jury instruction which stated in part: "*Any* verdict you reach must be unanimous." (Emphasis supplied, see N.J.I. Crim. 9.0.) The record does not reveal why the court departed from its original instruction. In any event, it is well established that if a jury is unable to reach a unanimous verdict in a criminal case, the result is a mistrial, not acquittal. *State v. Gresham*, 276 Neb. 187, 752 N.W.2d 571 (2008).

Almost immediately after receiving the district court's response to its inquiry, the jury returned its verdict, finding Williams not guilty of the first four counts of the amended information and guilty of the fifth count, third degree sexual assault. We can assume that at least one, if not more, of the jury's not guilty verdicts were not unanimous. While we cannot correct this error, as jeopardy has attached in this case, such an error does somewhat encumber our analysis of Williams' claim regarding the sufficiency of the evidence to support his conviction. Without

unanimous verdicts, it is difficult to have a clear understanding of the jury's conclusions regarding the facts. Perhaps most importantly, had the not guilty verdicts been known to be unanimous, we would have a much better sense of what parts of the testimony the jury found to be credible or not credible.

The second issue which hampers our analysis of Williams' sufficiency claim is that our record on appeal does not include any of the exhibits which were offered into evidence at trial. As a general proposition, it is incumbent upon the appellant to present a record supporting the errors assigned; absent such a record, an appellate court will affirm the lower court's decision regarding those errors. *State v. Ferrin*, 305 Neb. 762, 942 N.W.2d 404 (2020). Neb. Ct. R. App. P. § 2-105(B)(1)(b) provides, in relevant part:

> The request [for a bill of exceptions] shall specifically identify each portion of the evidence and exhibits offered at any hearing which the party appealing believes material to issues to be presented to the Supreme Court for review. The court reporting personnel shall prepare only those portions specified in the request for preparation of the bill of exceptions. If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the bill of exceptions must include all evidence relevant to the finding or conclusion.

It was Williams' responsibility as appellant to present a complete record in order to support his claim that the evidence was insufficient. He failed to do so. In such a circumstance, we could simply affirm the jury's verdict because of the incomplete record provided to us. See, e.g., *Sanwick v. Jenson*, 244 Neb. 607, 508 N.W.2d 267 (1993); *Ward v. Ward*, 220 Neb. 799, 373 N.W.2d 389 (1985). However, we have determined that despite not having the trial exhibits to review, that the trial testimony contained in our record sufficiently supports Williams' conviction for third degree sexual assault. In our review, we have presumed that the trial exhibits did not provide any exculpatory evidence in favor of Williams.

The jury convicted Williams of third degree sexual assault of a child. Section 28-320.01 provides, in relevant part:

> (1) A person commits sexual assault of a child in the second or third degree if he or she subjects another person fourteen years of age or younger to sexual contact and the actor is at least nineteen years of age or older.
> . . . .
> (3) Sexual assault of a child is in the third degree if the actor does not cause serious personal injury to the victim.

Pursuant to Neb. Rev. Stat. § 28-318(5) (Reissue 2016), sexual contact includes "the intentional touching of the victim's sexual or intimate parts or the intentional touching of the victim's clothing covering the immediate area of the victim's sexual or intimate parts." Sexual contact also includes "the touching by the victim of the actor's sexual or intimate parts or the clothing covering the immediate area of the actor's sexual or intimate parts when such touching is intentionally caused by the actor." *Id*.

During her testimony, E.T. testified that Williams had repeatedly touched her breasts both underneath and over her clothing. In fact, she described instances where Williams "sucked" on her

breasts with his mouth. E.T. also described one instance where Williams kissed her and put his tongue inside of her mouth. She testified that Williams had touched her vaginal area with his hand. E.T. described several times that Williams had made her place her hand on his penis and manually stimulate him.

E.T.'s testimony, if found credible by the jury, was sufficient to demonstrate that Williams committed third degree sexual assault of a child. Given the jury's guilty verdict, we must conclude that it found E.T.'s testimony as to the allegations of third degree sexual assault to be credible. The credibility and weight of witness testimony are for the jury to determine, and witness credibility is not to be reassessed on appellate review. *State v. Archie*, 273 Neb. 612, 733 N.W.2d 513 (2007).

We do recognize that despite E.T. testifying that Williams also sexually penetrated her on at least two occasions, that the jury did not find him guilty of first degree sexual assault of a child. It is within a jury's province to reject the whole or any part of the evidence of any witness. See *Franz v. State*, 156 Neb. 587, 57 N.W.2d 139 (1953). In that same vein, the jury was free to reject the conflicting testimony of witnesses such as Erika and A.V.-L., which presented a different version of some of the incidents described by E.T. We again note that in the present case we cannot assume that all or even a majority of the jurors found E.T.'s testimony regarding the four charges upon which Williams was acquitted not to be credible. However, even if the verdicts had been unanimous, the jury would have been free to find that the more serious charges were not proven while finding Williams guilty of the remaining count.

As to Williams' assertion on appeal that law enforcement's investigation into E.T.'s sexual assault allegations was too cursory, we simply note that Williams was able to cross-examine law enforcement officers involved in the investigation regarding their investigative process. Through this cross-examination, Williams was able to point to any purported shortcomings in the investigation. In addition, during closing arguments, Williams' counsel argued to the jury the insufficiency of the investigation.

Ultimately, we cannot find any error in the jury's determination that the portion of E.T.'s testimony which described incidents of third degree sexual assault of a child was credible. Given E.T.'s testimony, there was sufficient evidence presented to support Williams' conviction for third degree sexual assault of a child.

## 2. EXCESSIVE SENTENCE

### (a) Standard of Review

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Morton*, 310 Neb. 355, 966 N.W.2d 57 (2021).

An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Martinez*, 306 Neb. 516, 946 N.W.2d 445 (2020).

### (b) Analysis

Williams argues that the district court imposed an excessive sentence. Specifically, Williams asserts that he should have been sentenced to a term of probation rather than to a term of incarceration. He also argues that even if a sentence of incarceration was appropriate, 30 months

was more than what was necessary "to protect the public, reflect the gravity of the offense, and rehabilitate Williams." Brief for appellant at 24.

Williams was convicted of one count of third degree sexual assault of a child, a Class IIIA felony, pursuant to § 28-320.01(3). A Class IIIA felony is punishable by a maximum of 3 years' imprisonment and 18 months' post-release supervision, a $10,000 fine, or both; there is no minimum term of imprisonment, but there is a minimum of 9 months' post-release supervision if imprisonment is imposed. See Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2020). The district court sentenced Williams to 30 months' imprisonment in addition to 18 months of post-release supervision. Williams' sentence is clearly within the statutory limits. As such, we consider whether the district court abused its discretion in the sentence ordered.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the crime. *State v. Morton*, *supra*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Williams was 35 years old at the time of sentencing. He is a college graduate and was employed full time prior to the sentencing hearing. He is a former police officer and has been an active member of the Army National Guard since 2009. Williams remains married to Erika, E.T.'s mother. He has no criminal history, but at the time of sentencing in this case, he had pending charges of first degree sexual assault of a child and incest in Douglas County. Such charges also named E.T. as the victim. Williams continued to deny that he was guilty of sexually assaulting E.T. He claimed that E.T. was lying.

Testing conducted by the probation office revealed that Williams posed a low risk of re-offense. Williams indicated that if he was placed on probation, he was willing to comply with any of the conditions required of him.

At the sentencing hearing, the State advocated in favor of the maximum sentence permitted under the law. To the contrary, Williams and his counsel advocated in favor of a term of probation. The district court explicitly detailed its analysis of each of the factors contained in § 29-2260 which may weigh in favor of imposing a sentence of probation rather than a sentence of incarceration. Section 29-2260(3) provides a noncontrolling set of factors that trial courts may give weight to when considering a sentence of probation as opposed to a sentence of imprisonment. These factors include a consideration of whether

(a) The crime neither caused nor threatened serious harm;

(b) The offender did not contemplate that his or her crime would cause or threaten serious harm;

(c) The offender acted under strong provocation;

(d) Substantial grounds were present tending to excuse or justify the crime, though failing to establish a defense;

(e) The victim of the crime induced or facilitated commission of the crime;

(f) The offender has compensated or will compensate the victim of his or her crime for the damage or injury the victim sustained;

(g) The offender has no history of prior delinquency or criminal activity and has led a law-abiding life for a substantial period of time before the commission of the crime;

(h) The crime was the result of circumstances unlikely to recur;

(i) The character and attitudes of the offender indicate that he or she is unlikely to commit another crime;

(j) The offender is likely to respond affirmatively to probationary treatment; and

(k) Imprisonment of the offender would entail excessive hardship to his or her dependents.

*Id*.

Ultimately, the district court concluded that Williams had been convicted of an unprovoked and unjustified crime which "cause[d] serious long-lasting, emotional scars to the victim[;]" that given his previous employment as a police officer that he knew the type of harm his actions would cause; and that the evidence indicated that given the opportunity, he may commit this type of offense again. The court then stated:

So the court will find, based on the foregoing, the evidence received at trial and at sentencing, the trial – as far as the trial that supported this conviction, and the testimony today and the evidence received today, as well as the PSI, that substantial and compelling reasons exist why you cannot be effectively and safely supervised in the community while on probation. That a lesser sentence than incarceration would depreciate your crime and promote disrespect for the law.

There are many people that come before the Court, including those who have had places of authority with religion, that have no history, that have done vile things, and the Court must address those things so that society knows this type of behavior is not tolerated.

The Court will consider your lack of criminal history as far as convictions, however, and your service to your country though the National Guard in passing sentence.

Our review of the record reveals that the district court carefully considered all of the relevant information in making its sentencing determination. There is no indication that the court relied on incorrect information or that it failed to consider any of the mitigating factors present in this case. Rather, the court weighed the information before it and determined that Williams was not an appropriate candidate for probation, and instead sentenced him to a term of 30 months' incarceration plus 18 months' post-release supervision. Denial of probation and imposition of a sentence within statutorily prescribed limits will not be disturbed on appeal absent an abuse of discretion. See *State v. Thomas*, 238 Neb. 4, 468 N.W.2d 607 (1991). Here, we note that while Williams has no criminal record, the crime for which Williams was convicted was alleged to occur during a significant period of time. The evidence adduced at trial demonstrated that Williams subjected E.T. to sexual contact repeatedly over the course of more than 18 months. Williams' sentence is within the statutory limits and is not an abuse of discretion.

## V. CONCLUSION

For the reasons set forth above, we affirm Williams' conviction and sentence.

AFFIRMED.