IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. THORNBURG

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

STEVEN G. THORNBURG, APPELLANT.

Filed June 28, 2022.    No. A-21-1021.

Appeal from the District Court for Jefferson County: VICKY L. JOHNSON, Judge. Affirmed.

Matthew K. Kosmicki, of Kosmicki Law, for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

MOORE, BISHOP, and ARTERBURN, Judges.

MOORE, Judge.

## INTRODUCTION

Following his plea of guilty, Steven G. Thornburg was convicted in the district court for Jefferson County of one count of attempted first degree sexual assault. He was sentenced to 15 to 20 years' imprisonment. On appeal to this court, Thornburg assigns as error that his trial counsel provided ineffective assistance in several regards and that the court imposed an excessive sentence. We affirm.

## STATEMENT OF FACTS

Thornburg was originally charged with one count of first degree sexual assault of a child. Subsequently, Thornburg entered into a written plea agreement in which he agreed to plead guilty to one count of attempted first degree sexual assault. In exchange for Thornburg's plea, the State agreed to remain silent at the time of sentencing.

- 1 -

In February 2021, Thornburg's attorney filed a motion to take depositions of the victim, her brother, her father, and two other witnesses, which was granted by the district court. At that point, a jury trial was scheduled to start on July 27. Thornburg's attorney filed a motion to travel to Texas to take depositions of the victim and "other witnesses identified by the State," which was also granted. He subsequently filed a notice to take depositions, notifying the State that depositions of the victim and her brother were set to be taken at a particular location and time in Texas on May 21. The record does not reveal whether these depositions were actually taken but the transcript does contain a pleading filed by Thornburg's attorney on June 24, indicating that in compliance with the court's discovery order, Thornburg had provided the State with his list of witnesses through a letter attached to the pleading. The letter from Thornburg's attorney, also dated June 24 and addressed to the prosecutor, states that Thornburg's attorney "may call any of the witnesses identified on the Information on file herein as witnesses at trial" and also "reserve[d] the right to call any additional witness identified and/or endorsed by the State." (The victim and her brother were both identified as witnesses on the information).

On July 8, 2021, a plea hearing was held before the district court. The court advised Thornburg of the rights that he would be waiving by entering the plea and of the possible penalties; Thornburg indicated his understanding of the rights that he would be waiving and of the possible penalties. Thornburg denied that he had been promised anything in order to plead or that he was threatened in any way. The court found beyond a reasonable doubt that Thornburg understood his rights; was waiving them freely, voluntarily, knowingly, and intelligently; and understood the consequences of his waiver. The court accepted Thornburg's waiver. Thornburg then affirmed that he had told his attorney everything he knew about the case, that his attorney had discussed options with him including going to trial, that he had had enough time to talk to his attorney about the case, and that he felt his attorney "knows what he is doing."

The State provided a factual basis as set forth in the affidavit for an arrest warrant for Thornburg, which the district court received into evidence. The affidavit indicated that on September 4, 2020, a sergeant with the Jefferson County Sheriff's Office responded to a possible sexual assault at a location in Fairbury, Nebraska, where he spoke to the victim's father. The father told the sergeant that while his daughter (born in June 2005) had denied having sex with Thornburg (born in June 1962), she had told a friend that she had had sex with Thornburg. The sergeant asked the father to bring his daughter to the sheriff's office. At the sheriff's office, the victim spoke with a female deputy and told the deputy that she and her brother had been staying with Thornburg recently because she was upset with her father. The victim went on to describe sleeping in Thornburg's bed with him, stating that they were both naked with her "on top of him," and describing a sexual encounter involving Thornburg's penis penetrating her anus.

The deputy who authored the arrest warrant affidavit spoke with the victim's brother, who described an incident he observed during which "it looked like [Thornburg] was grabbing [the victim's] breasts" while they were both clothed. When the brother inquired, both Thornburg and the victim denied that anything had happened. The brother also confirmed that Thornburg and the victim had slept in the same bed during the time they stayed with him. On another occasion, the brother arrived at Thornburg's house and heard the victim "moaning loud in [Thornburg's] bedroom." On that occasion, when confronted by the brother, the victim admitted "having sex" with Thornburg. The brother also confronted Thornburg, who "told him he didn't have sex and

was sucking on [the victim's] breasts." The brother reported the incident to his mother, who in turn reported the incident to the father. When the father questioned the victim and Thornburg, they both denied that anything had happened.

The affidavit indicated that after being interviewed at the sheriff's office, the victim was interviewed at the Child Advocacy Center in Lincoln, Nebraska where she reported being "manipulated to have sex," and she described having both vaginal and anal sex. The report from the advocacy center stated that "[the victim's] mental health deteriorated as the interview progressed" and indicated that she was taken to the hospital for in-patient counseling. The advocacy center report also had noted the victim's father's report that he was renovating their residence, did not have running water or food, and had asked Thornburg to keep the victim and her brother for a time so that they would have food and water.

Upon inquiry by the district court, Thornburg's attorney indicated that he did not have anything to add to the facts, and Thornburg affirmed that he was familiar with the affidavit's contents. The court then asked Thornburg whether he did "what the county attorney claims in the affidavit," to which Thornburg's attorney responded, "[H]e's prepared to plead guilty. There are a couple of things he's accused of that because of a medical condition he's incapable of, but he still agrees that he is guilty and plans to plead guilty." Upon further inquiry by the court, Thornburg affirmed that he wished to plead guilty and agreed that there were enough facts to find him guilty of the amended charge. The court accepted Thornburg's guilty plea, found a sufficient factual basis, and found Thornburg guilty of the count to which he had pled.

At a sentencing hearing on October 7, 2021, Thornburg moved to recuse the judge as she heard the prosecutor make a recommendation for sentencing in contravention of the plea agreement. The district court granted Thornburg's motion, and another judge was assigned to the case.

The rescheduled sentencing hearing before the new judge was held on December 2, 2021. At the start of the hearing, the prosecutor confirmed that the parties' plea agreement required her to "remain silent" and that she had nothing further to add. The court then heard statements from Thornburg's attorney and from Thornburg, who expressed his regret for the "really bad decision" he made in August 2020. Thornburg also stated that he took "full responsibility" for his actions, expressed hope that the victim would someday forgive him, and thanked the court for listening.

In its comments before sentencing Thornburg, the district court noted the reduction to the charge through the parties' plea agreement, Thornburg's scores on the level of service/case management inventory in the presentence investigation (PSI) indicating his low-risk level of re-offense, and Thornburg's minimal prior criminal history. The court then described the present case as "extremely serious," noting the disarray of the victim's home life at the time she went to stay with Thornburg and her "emotional issues that appear to have been exacerbated due to [Thornburg's] actions." The court noted having read the police reports and stated, "There's kind of a wide gap between what it is you admit to doing and what it is that was alleged. And whether it was just a one-time mistake or more than once in a ten-day period, whatever it was, it clearly had an adverse effect on this young lady" and would continue to do so. The court noted the victim's "mental breakdown" while being interviewed, the age difference between the victim and Thornburg, and stated again that this was "a serious offense, extremely serious offense." The court noted the factors it had considered, including Thornburg's age, mentality, education and

experience, social and cultural background, past criminal record, motivation for the offense (which the court found appeared to be "pure selfishness"), the nature and seriousness of the offense, and the violence, mental or physical, implicit in the fact that the victim "is unable to consent." The court found that Thornburg was not a fit candidate for probation and sentenced him to imprisonment for a period of 15 to 20 years and granted him credit for 13 days of time served.

## ASSIGNMENTS OF ERROR

Consolidated and restated, Thornburg assigns that he received ineffective assistance of trial counsel when his attorney (a) failed to investigate Thornburg's defenses such as credibility issues of the State's witnesses, present medical evidence about Thornburg's erectile dysfunction, and point out inconsistencies in the victim's reports, thereby failing to prepare for trial; (b) failed to proceed to a jury trial, contrary to Thornburg's wishes, and forced him to enter a plea; (c) failed to file a motion to withdraw Thornburg's plea as directed by Thornburg; and (d) advised Thornburg that he would receive probation if the plea was not withdrawn and to "falsely report" during the presentence investigation that he had digitally penetrated the victim so it would appear that Thornburg was accepting responsibility. Brief for appellant at 5. Thornburg also assigns that the district court abused its discretion by imposing an excessive sentence.

## STANDARD OF REVIEW

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Drake*, 311 Neb. 219, 971 N.W.2d 759 (2022). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

Absent an abuse of discretion by the trial court, an appellate court will not disturb a sentence imposed within the statutory limits. *State v. Grant*, 310 Neb. 700, 968 N.W.2d 837 (2022). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *Id.*

## ANALYSIS

*Ineffective Assistance of Counsel.*

Thornburg has different counsel on direct appeal than he did at trial. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the ineffective assistance of trial counsel issue will be procedurally barred. *State v. Drake, supra*.

Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id*. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to

establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.* Conversely, an ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *Id.*

The necessary specificity of allegations of ineffective assistance of trial counsel on direct appeal for purposes of avoiding waiver requires, at a minimum, allegations of deficient performance described with enough particularity for an appellate court to make a determination of whether the claim can be decided upon the trial record and also for a district court later reviewing a potential petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *Id.* Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. John*, 310 Neb. 958, 969 N.W.2d 894 (2022). To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *Id.* In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *Id.* The two prongs of this test may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable. *State v. John, supra*.

Thornburg first assigns that he received ineffective assistance of trial counsel when his attorney failed to investigate Thornburg's defenses such as credibility issues of the State's witnesses, present medical evidence about Thornburg's erectile dysfunction, and point out inconsistencies in the victim's reports, thereby failing to prepare for trial.

This claim is refuted by the record, in part, which shows that on February 25, 2021, Thornburg's attorney filed a motion to take depositions of witnesses, including the victim, her brother, and her father and that the district court subsequently granted his attorney permission to travel to Texas to depose witnesses, including the victim, and that the depositions were scheduled. Although the record does not indicate whether the depositions actually occurred, it does show that Thornburg's attorney identified the victim and her brother as witnesses he intended to call at trial in a discovery compliance pleading filed with the court. Finally, Thornburg affirmed at the plea hearing that he had told his attorney everything he knew about the case, that his attorney had discussed various options such as going to trial and plea agreements with him, that he had had enough time to talk about the case with his attorney, and that he felt his attorney was competent and knew what he was doing. Thornburg's attorney clearly took certain steps in preparing for trial, and Thornburg has not shown that his attorney's actions were unreasonable in that regard.

Thornburg also claims that his attorney failed to present medical evidence about Thornburg's erectile dysfunction which prevented him from being able to sexually penetrate the

victim. However, the record shows that this was something that was addressed by Thornburg's attorney at the plea hearing where Thornburg's attorney informed the court that although "[t]here are a couple of things [Thornburg's] accused of that because of a medical condition he's incapable of," he "still agrees that he is guilty and plans to plead guilty." Thornburg confirmed that he wished to plead guilty and agreed that there were "enough facts to find [him] guilty" of the charge in the amended information, which was reduced to attempted sexual assault. We also note that the PSR included a letter from Thornburg's medical doctor noting Thornburg's history of anxiety and depression, history of erectile dysfunction which could be caused by the medications prescribed for anxiety and depression, and Thornburg's report that "he still was unable to obtain an erection" even after a trial prescription of medication for that condition.

Thornburg has not shown that his attorney performed deficiently in failing to investigate and attack the victim's credibility, in failing to present medical evidence, or in otherwise failing to prepare for trial. Further, Thornburg does not explain what exculpatory evidence would have been procured by further investigation or how such evidence would have affected the outcome of the case. See *State v. Vanderpool*, 286 Neb. 111, 835 N.W.2d 52 (2013) (in context of claim of ineffectiveness of counsel for failure to investigate, allegations are too speculative to warrant relief if petitioner fails to allege what exculpatory evidence that investigation would have procured and how it would have affected outcome of case). This assignment of error fails.

Next, Thornburg assigns that he received ineffective assistance of trial counsel when his attorney failed to proceed to a jury trial, contrary to Thornburg's wishes, forced him to enter a plea, and failed to file a motion to withdraw Thornburg's plea as directed by Thornburg. He also assigns that his attorney was ineffective in advising him that he would receive probation if the plea was not withdrawn. He argues he did not have time to review the plea agreement before signing it, that he was completely surprised when the district court informed him of the purpose of the plea hearing, that he was confused during the hearing and wanted to contest the charges against him, and that he felt pressured to enter into the plea agreement.

Thornburg's assertions are refuted by the record. The written plea agreement, signed by Thornburg, specified among other things, that Thornburg understood the court was not bound by any agreements between the parties concerning sentencing and that the court had the sole responsibility for determining the appropriate sentence. At the plea hearing, Thornburg confirmed to the court that he had read the written plea agreement and that it contained the entire agreement between him and the State. He affirmed that he had not been threatened or forced to enter his plea and that he had not received any promises, other than the plea agreement, in exchange for doing so. Thornburg also affirmed that he wished to waive his rights and enter a plea of guilty. See *State v. Vanness*, 300 Neb. 159, 912 N.W.2d 736 (2018) (finding ineffective assistance of counsel claim refuted by defendant's statements to court during plea colloquy). See, also, *State v. Vanderpool, supra* (allegations of ineffective assistance which are affirmatively refuted by defendant's assurances to sentencing court do not constitute basis for postconviction relief).

Further, the right to withdraw a plea previously entered is not absolute. *State v. Canaday*, 307 Neb. 407, 949 N.W.2d 348 (2020). When a defendant moves to withdraw his or her plea before sentencing, a court, in its discretion, may sustain the motion for any fair and just reason, provided that such withdrawal would not substantially prejudice the prosecution. *Id.* The defendant has the burden to show the grounds for withdrawal by clear and convincing evidence. *Id.* Thornburg states

that his attorney refused to file a motion to withdraw his plea, but he has not alleged any justification for filing such a motion. As noted, Thornburg's arguments about the entry of his plea are refuted by the record. These assigned errors fail.

Finally, Thornburg assigns that he received ineffective assistance of trial counsel when his attorney advised him to "falsely report" during the presentence investigation that he had digitally penetrated the victim so it would appear that Thornburg was accepting responsibility. Brief for appellant at 5. He argues that as a result of his attorney's advice, he "falsely reported that he had digitally penetrated the victim and [that report] no doubt contributed" to the district court sentencing him to 15 to 20 years' imprisonment. At the time of the plea hearing, Thornburg affirmed to the court that he wished to plead guilty and he agreed that there were enough facts to find him guilty of the amended charge. Thornburg has not shown that his counsel's performance was deficient in connection with this claim. Further, as discussed below, the district court did not abuse its discretion in sentencing Thornburg. Thornburg is unable to show that the alleged actions of his counsel in preparing him for the probation interview resulted in an excessive sentence.

*Excessive Sentence.*

Thornburg asserts that the district court abused its discretion by imposing an excessive sentence. The court sentenced Thornburg to 15 to 20 years' imprisonment for attempted first degree sexual assault, a Class IIA felony. See Neb. Rev. Stat. § 28-319(2) (Reissue 2016); Neb. Rev. Stat. § 28-201(4)(b) (Cum. Supp. 2020). His sentence is within the statutory limits. See Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2020).

When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles. *State v. Morton*, 310 Neb. 355, 966 N.W.2d 57 (2021). When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Thornburg argues that the district court abused its discretion in failing to meaningfully consider the circumstances surrounding his offense and ignoring the nature of the offense, as well as his rehabilitative needs, age, mentality, life circumstances, and willingness to enter into a plea.

According to the PSR, Thornburg, age 59 at the time of his interview with probation, has a GED, and had been disabled due to obsessive-compulsive disorder/depression for several years. He was divorced, had no minor dependents, and had been in a relationship with his current significant other for 6 months prior to the probation interview. He does not have any significant prior criminal history. He reported that a friend of his dad "touched his privates" when he was about 14 years old. Thornburg scored in the overall low risk range on the Level of Service/Case Management Inventory. He also scored in the low risk range on the Vermont Assessment for Sex Offender Risk. His score on the Simple Screening Instrument indicated a minimal risk for

substance misuse, and the Standardized Risk Assessment Report Form for substance abuse offenders he completed reflected a low risk for recidivism. Thornburg completed a Mental Health Screen that indicated a need for further intervention and mental health support.

The probation officer who completed the PSI placed Thornburg "in the Contemplation Stage of Change as he admits his actions, understands his actions were flawed, and is willing to obtain an evaluation" and follow its recommendations. She stated that she "would leave the sentencing recommendation to the Court due to the seriousness of this offense," but noted Thornburg's minimal criminal history, his "partial admission" to his actions in the case, and the fact that he was disabled and had lived in Fairbury for most of his life. She did recommend certain terms if the court felt Thornburg was a suitable candidate for probation.

The district court's comments at the sentencing hearing reflected that it had considered all of the relevant factors with respect to Thornburg and the particular circumstances of this case. Based upon this record, we can find no abuse of discretion by the court in the sentence imposed.

CONCLUSION

The record refutes that Thornburg received ineffective assistance from his trial counsel. The district court did not abuse its discretion in sentencing Thornburg. Accordingly, we affirm his conviction and sentence.

AFFIRMED.