IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. MILNE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

SUZY A. MILNE, APPELLANT.

Filed January 24, 2023.    No. A-22-394.

Appeal from the District Court for Madison County: JAMES G. KUBE, Judge. Affirmed.

Michael C. Moyer, of Moyer, Moyer & Lafleur, for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

RIEDMANN, ARTERBURN, and WELCH, Judges.

ARTERBURN, Judge.

### INTRODUCTION

Suzy A. Milne, formerly known as Heather Schindler, was found guilty of first degree sexual abuse of a protected individual and sentenced to 2 to 4 years' imprisonment. On appeal, Milne alleges the district court erred in denying her motion for absolute discharge on speedy trial grounds and in imposing an excessive sentence. Milne also alleges her trial counsel was ineffective for failing to cross-examine the victim and in putting on no evidence at trial. Upon our review of the record, we affirm Milne's conviction and sentence.

### BACKGROUND

On May 11, 2021, an information was filed in the district court for Madison County charging Milne with one count of first degree sexual abuse of a protected individual, a Class IIA felony, and one count of second degree sexual abuse of a protected individual, a Class IIIA felony. Milne arrived for her arraignment on the charges with counsel on May 21. Before beginning the

arraignment, the court addressed Milne's previously filed motion for counsel to withdraw. Despite being informed that counsel could be appointed to her at the State's expense, Milne informed the court that she intended to represent herself, and the court found that Milne freely, intelligently, voluntarily, and knowingly waived her right to counsel. The court then noted that there was an error on the dates listed on count II of the information and continued the arraignment to allow the State to file an amended information.

On June 25, 2021, Milne came before the court for her arraignment on the amended information. Before proceeding, the court inquired about Milne's son. The court then determined that due to his son having a close friendship with Milne's son, there was a conflict of interest present and he should be recused. The court continued the arraignment and transferred the case to another judge's docket. On July 7, Milne appeared before the new judge for arraignment. This court discussed the right to counsel with Milne at length. Eventually, Milne agreed to have appointed counsel from the Madison County Public Defender's Office. Milne then entered pleas of not guilty to both counts contained in the amended information.

At hearings held on August 30 and September 27, 2021, defense counsel, with the consent of Milne, requested continuances of the proceedings, which were granted by the court. Milne did not appear at a third hearing scheduled for November 29. A motion to continue requested by her counsel was granted over the State's objection. Milne attended the next scheduled hearing on December 20 via online videoconferencing without receiving permission from the court to appear in such fashion. At the start of the December 20 hearing, Milne again requested that her appointed counsel withdraw. This request was apparently due to a conversation in which her counsel informed her that the State only agreed to allow Milne to appear at the hearing virtually in exchange for a waiver of her right to a speedy trial. The court denied Milne's request to allow defense counsel to withdraw and informed Milne that she could not attend court hearings virtually. Defense counsel then asked for another continuance. The court granted the continuance noting that Milne "has not waived her right to a speedy trial today, but she has done so previously."

On March 4, 2022, Milne appeared before the court to waive her right to a jury trial. A bench trial was scheduled for March 15. On March 10, Milne filed a motion for absolute discharge on speedy trial grounds. A hearing on the motion to discharge was held the next day. Milne's counsel argued that the speedy trial clock was at 196 days because Milne did not consent to the continuance on December 20. The State offered into evidence journal entries and orders from all the previous hearings and requested the court to take judicial notice of the same. The State argued that in addition to the continuances requested by Milne or her counsel, the speedy trial clock should be tolled for good cause during the period wherein Milne's arraignment was continued. In a written order, the court denied the motion for absolute discharge. The court did not make a good cause finding regarding the continuances of the arraignment, but did determine that the continuances requested by defense excluded all of the time between August 30 and January 10, which put the trial date of March 15 within the period allowed pursuant to the speedy trial statute.

A bench trial was held on March 15 and 16, 2022. The State presented evidence of a relationship between Milne, who had been employed at the Norfolk Regional Center (NRC), and the victim, C.A., who was a patient there. Don Whitmire, the hospital administrator of NRC testified that NRC is a full-time facility that provides treatment to individuals who are committed for sexual offense crimes and are under the care, custody, and control of the Department of Health

and Human Services. He further explained that in July 2017, Milne was hired as a direct mental health specialist, also called a "tech." The techs are charged with monitoring the patients, assisting in carrying out treatment plans, and escorting patients between activities. As part of her initial training, Milne received information that emphasized the importance of employees setting professional boundaries with the patients. In December 2017, Milne was promoted to the position of compliance specialist at NRC, a position which provided her with more autonomy and authority.

Whitmire also testified regarding C.A.'s time at NRC. He explained that C.A. had two separate stays at NRC. He explained that C.A.'s first stay began prior to Milne's employment at NRC and went through November 29, 2017, when he was transferred to the Lincoln Regional Center. C.A. returned for his second stay on February 22, 2018, and remained at NRC until May 9, 2019. Whitmire testified that during C.A.'s second stay, he had growing concerns about Milne and her professional boundaries with C.A. due to complaints from other employees. Milne's employment at NRC was terminated in April 2018.

Anna Brewer, an investigator with the Nebraska Attorney General's Office Human Trafficking Task Force testified that she was called into an investigation by the Omaha Police Department regarding allegations of human trafficking by C.A. following his release from NRC. The source of information was Milne. Brewer interviewed Milne on more than one occasion in December 2020, and ultimately determined that her allegations against C.A. were unfounded. However, during the course of the interviews, Milne admitted that she and C.A. had a voluntary intimate relationship during the course of her employment at NRC. Milne described her sexual contact with C.A. in specific terms as to sexual intercourse and touching, but did not state specifically when or where these events took place.

C.A. testified for the State. He said that he had a reputation at NRC of being a difficult patient. Milne was able to connect with him through a series of one-on-one sessions, and, according to C.A., their relationship grew from there. C.A. explained that at one point, he requested a cellular telephone so that he and Milne could have more contact with each other. C.A. testified that Milne sent pornographic, nude photos of herself to the cell phone she provided him. Two other patients at NRC testified that C.A. showed them these photos on the cell phone. C.A. detailed the conversations he and Milne would have over the phone that were sexual in nature. Milne and C.A. also held a "telephonic marriage ceremony" in which they swore to commit to each other.

During his testimony, C.A. provided detailed information about the various sexual encounters he had with Milne over the course of their relationship. The first encounter took place within the NRC facility in 2017 while Milne was still employed as a tech. At the time, C.A. was assigned to janitorial duty, so he and Milne planned for him to request bleach to clean the bathroom where they knew that no cameras would be present. Milne entered the bathroom with the bleach, and the two proceeded to have oral sex and sexual intercourse in the shower. A second encounter took place while C.A. was being housed at another regional center. Posing as a family member, Milne learned that C.A. was scheduled for a doctor's appointment, so she went to the doctor's office to meet him in the bathroom where they engaged in sexual intercourse.

A third encounter took place during C.A.'s second stay at NRC. To achieve this liaison, C.A. submitted a complaint about the tile in his room. Milne arranged to be the compliance specialist assigned to follow up on the complaint which involved entering C.A.'s room. When she entered the room, C.A. testified that Milne briefly performed oral sex on him and then left the

room because they were concerned about getting caught. A fourth encounter between the two was attempted after Milne had been terminated from NRC. Again, Milne planned to meet C.A. in the bathroom during one of his doctor's appointments, but the attempt failed when someone walked into the bathroom while Milne was present. C.A. concluded his testimony by describing how his relationship with Milne had hurt his treatment development by hindering his progress through the program.

After C.A.'s direct examination, Milne's counsel requested a brief recess. When the parties returned, defense counsel informed the court that she would not be cross-examining C.A. The State then rested, and Milne's counsel rested without adducing any evidence. The court recessed for the day.

The next day, the State moved to withdraw its rest, was granted leave to do so, and recalled two witnesses, including C.A., before again resting its case. After another brief recess, Milne's counsel chose not to cross-examine C.A. or put on any further evidence. The court found Milne guilty of first degree sexual abuse of a protected individual and not guilty of second degree sexual abuse of a protected individual. A presentence investigation report was ordered, and sentencing was scheduled for May 19, 2022.

At sentencing, the court first addressed a letter submitted by Milne as an addendum to the presentence investigation report. In the letter, Milne claimed that any sexual contact between herself and C.A. was nonconsensual and that she was the victim of sexual assault. The court then stated the following:

> Even though you admit to having consensual sexual contact with him in the statement that you gave [to the probation office]. You don't show any remorse for what's happened and I take it that's because you think that you're a victim.

> You had a relationship with [C.A.] while he was a patient in the Regional Center. You did have sexual relations with him while he was a patient in that Regional Center several times. You tried to help him get out of the Regional Center system. You told him things about what the doctors or care providers had said about him with regard to his treatment. Things that, you know, a patient should not be told about.

> You had a ceremony, for lack of a better word, and that's something that you had over the phone with [C.A.], exchanging marital vows and entering into a contract with him. In that contract, you agreed to be submissive to him.

> So, you know, it's hard for me to see you so much as a victim in this situation even if you are because it seems like you've placed yourself or did place yourself in that position.

> You claim that you were raped and didn't have voluntary consensual sex with him while he was in the Regional Center, yet you never reported that as such and filed a police report or anything like that. And after that, did enter into this ceremony with him.

> So, you know, it's a little bit hard for me, you know, to see you so much as a victim in this situation based on all the evidence of that.

The presentence investigation report revealed that Milne is 49 years old and holds two master's degrees. Milne has been married three times and has 10 children, two of which are still minors. Her criminal history is minimal with only a handful of traffic violations that resulted in small fines prior to this case. Throughout the interview with the probation office, Milne showed

no remorse or accountability for her actions. She reported using marijuana nightly while she was employed at NRC to "make it through work." Milne's last reported marijuana use was in January or February 2022. The probation officer opined that Milne would benefit greatly from the structure and accountability of probation but believed that it was unlikely that she would comply with many of the conditions of probation. Because of this and the seriousness of the offense charged, the probation officer recommended that Milne be sentenced to a term of incarceration.

After considering Milne's letter, the information provided in the presentence investigation report and comments of counsel, the court determined that Milne was not a good candidate for probation because such a sentence would depreciate the seriousness of the crime committed and promote disrespect for the law. Milne was sentenced to an indeterminate term of not less than 2 nor more than 4 years' imprisonment with credit for 2 days previously served.

Milne appeals.

## ASSIGNMENTS OF ERROR

Now represented by different counsel, Milne's assignments of error, restated and renumbered, are that (1) the district court erred in overruling her motion for absolute discharge on speedy trial grounds, (2) her trial counsel was ineffective for failing to cross-examine the victim and for failing to adduce any evidence in defense to the charges pending against her, and (3) that the district court abused its discretion by imposing an excessive sentence.

## STANDARD OF REVIEW

A trial court's determination as to whether charges should be dismissed on speedy trial grounds is a factual question that will be affirmed on appeal unless clearly erroneous. *State v. Chase*, 310 Neb. 160, 964 N.W.2d 254 (2021).

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirements. *State v. Warner*, 312 Neb. 116, 977 N.W.2d 904 (2022). An appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id.*

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Morton*, 310 Neb. 355, 966 N.W.2d 57 (2021).

## ANALYSIS

*Speedy Trial.*

Milne first claims that the district court erred by failing to grant her motion to discharge based on the alleged violation of her right to a speedy trial pursuant to Neb. Rev. Stat. § 29-1207 and § 29-1208 (Reissue 2016). The statutory right to a speedy trial requires the State to bring criminal defendants to trial within 6 months of the date the information is filed against them. *State v. Abernathy*, 310 Neb. 880, 969 N.W.2d 871 (2022). However, § 29-1207 also defines certain periods of delay that are excludable and can extend this deadline. *State v. Abernathy, supra*.

Specifically, § 29-1207(4)(b) excludes any "period of delay resulting from a continuance granted at the request or with the consent of the defendant or his or her counsel." A defendant who is not brought to trial within the 6-month speedy trial deadline, as it is extended by any excluded periods, is entitled to an absolute discharge from the offense charged. *State v. Abernathy, supra*.

The district court entered its order denying Milne's motion for absolute discharge on March 11, 2022. It has been long established that the denial of a motion to discharge based on speedy trial grounds is a final order affecting a substantial right made in a special proceeding, and that failure to perfect an appeal within 30 days of the denial of such motion results in a waiver of that issue. *State v. Loyd*, 269 Neb. 762, 696 N.W.2d 860 (2005) (citing *State v. Jacques*, 253 Neb. 247, 570 N.W.2d 331 (1997)); *State v. Williams*, 277 Neb. 133, 761 N.W.2d 514 (2009). Milne's notice of appeal was filed on May 24, 2022, well more than 30 days after the March 11 order of the district court. Because she failed to timely appeal the denial of her motion to discharge, she has waived this issue and we do not have jurisdiction to review the district court's decision.

For the sake of completeness, we also note that though Milne's motion to discharge also claimed a violation of her constitutional right to a speedy trial, she made no argument in support of that claim in the district court. On appeal, Milne does not assign as error or argue that her constitutional right to a speedy trial was violated. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *State v. Sundquist*, 301 Neb. 1006, 921 N.W.2d 131 (2019).

*Ineffective Assistance of Counsel.*

Milne next alleges that her trial counsel was ineffective for failing to cross-examine the victim, C.A., and for failing to present any evidence in Milne's defense. Because these claims involve matters of trial strategy and privileged discussions between Milne and her counsel, they cannot be resolved on the record before this court.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Weathers*, 304 Neb. 402, 935 N.W.2d 185 (2019). The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id.* The determining factor is whether the record is sufficient to adequately review the question. *Id.*

The record in this case reveals that the victim, C.A. testified at length. Following the conclusion of his direct examination, Milne's counsel requested a brief recess. When the trial resumed, counsel informed the court that there would be no cross-examination. When the State recalled C.A. the next day, trial counsel again requested a brief recess before choosing not to cross-examine the witness. Then the defense rested without adducing any evidence. Presumably, during those recesses, there were conversations between Milne and her counsel regarding the decisions not to cross-examine C.A. or put on any other evidence in Milne's defense. However, if such conversations occurred, their content are unknown. Those decisions implicate matters of trial strategy, and therefore, cannot be resolved on the record before this court. Our record is insufficient to address these issues on direct appeal.

*Excessive Sentence.*

Finally, Milne alleges that her sentence was excessive. She argues that due to her minimal criminal history, high level of education, and familial obligations, the court should have sentenced her to a term of probation rather than incarceration. Upon our review, we find that the court did not abuse its discretion in sentencing Milne to a term of incarceration.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Morton*, 310 Neb. 355, 966 N.W.2d 57 (2021). Milne was convicted of a Class IIA felony punishable by up to 20 years' imprisonment with no minimum sentence. Neb. Rev. Stat. § 28-105 (Supp. 2019). Milne was sentenced to an indeterminate term of 2 to 4 years' imprisonment. Because this is within the statutory guidelines, we review the court's sentence for an abuse of discretion.

The record shows that the district court reviewed the presentence investigation report and considered all the appropriate sentencing factors. In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendants (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *State v. Morton, supra*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

The court specifically found that Milne was not a good candidate for probation. The court noted that Milne was in a position of trust when the offense took place, and that she seemed to show no remorse for her actions. The court was troubled that Milne claimed for the first time at sentencing that she was the victim in the situation and found her claim to be not credible. Because of the serious nature of this case, the court found it appropriate to sentence Milne to a term of imprisonment. Upon our review of the record, we find that the district court did not abuse its discretion.

CONCLUSION

For the reasons stated above, we affirm.

AFFIRMED.